10/05/2004  03:49   2059305370                SIROTE                           PAGE  05

SEP 0 9 2004

*Alabama Department of Transportation*
*Revised Grievance Hearing Procedure*

Docket Number:  876
Complainant: Alverene Butler

<u>Hearing conducted at Offices of ALDOT, Central Office,
Friday, August 6, 2004, commencing at 10:00 am</u>

<u>For Complainant,</u>
Alverene Butler:

Steven L. Atha, Esq.
Wiggins, Childs, Quinn & Pantazis, P.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

<u>For Respondent,</u>
Alabama Department of Transportation:

David R. Mellon, Esq.
Sirote & Permutt
2311 Highland Avenue South
P. O. Box 55727
Birmingham, Alabama 35255-5727

<u>For Intervenors,</u>
Adams interveners:
(objecting to the race conscious
provisions in the consent decree)

Gary Brown, Esq.
Fitzpatrick, Cooper & Clark
1929 Third Avenue, North, Suite 600
Birmingham, Alabama 35203

<u>Hearing Officer</u>
John T. Robertson, IV, Esq.
Henslee, Robertson, Strawn & Knowles, LLC
754 Chestnut Street
P.O. Box 246 (35902-0246)
Gadsden, Alabama 35901

DEFENDANT'S EXHIBIT P

10/05/2004  03:49   2059305370                SIROTE                                    PAGE  06

# FINDINGS OF FACT AND RECOMMENDATIONS

This matter was heard on August 6, 2004, and submissions were accepted thereafter from any party through 4:00 p.m. on Thursday, September 2, 2004. Having heard the evidence *ore tenus*, having reviewed the Exhibits, and having reviewed the several excellent and helpful subsequent submissions in behalf of Ms. Alverene Butler and the Alabama Department of Transportation, I hereby make the following Findings of Fact and Recommendations:

## Findings of Fact

1. The Complainant, Alverene Butler(Hereinafter "Ms. Butler"), an African-American female, started her employment with the Alabama Department of Transportation (Hereinafter "ALDOT") in July of 1994. She remains employed today, and there does not appear to have been any significant disciplinary action taken against her at any time relevant to these issues.

2. Over this time and up until the date of this Grievance, Ms. Butler worked under five (5) different supervisors. From April 2000, until February 2003, Ms. Butler worked under the supervision of James Horace (Hereinafter "Mr. Horace"). Although the date is not clear, it appears that Ms. Butler claims she was the victim of sexual harassment from Mr. Horace, starting sometime in 2001, when the department he supervised and she worked in moved to some location on Trotman Road.

3. During the time Ms. Butler was supervised by Mr. Horace, she complained about him to Mr. Chad Davis (Hereinafter "Mr. Davis"), Assistant District Engineer on November 20, 2001; to Mr. Davis and Mr. Mark Waits (Hereinafter "Mr. Waits"), District Engineer, on December 7, 2001; and to Mr. Davis and Mr. Waits, *inter alia*, in a meeting on February 25, 2003. These complaints were clearly to upper management. Ms. Butler testified she otherwise complained to upper management about Mr. Horace, and there is some support for this in Defendant's Exhibit 5. For example, the Termination Outline for Jim Horace contains notations on 12/19/00, 12/04/01, 12/21/01, 11/07/02, and 12/23/02, which indicate knowledge of on-going problems between Mr. Horace and the employees he supervised.

4. However, none of the documentation on these complaints evidences any allegation of sexual harassment. Despite this, Ms. Butler testified she referred to sexual harassment complaints she had against Mr. Horace in the meeting on December 7, 2001, and she testified she further told others, not part of her upper management, of these complaints. She admittedly did not file a grievance based upon any sexual harassment until the present one, and no one else claimed to have witnessed any such misconduct, at least before February 25, 2003.

5. Mr. Waits denied any knowledge of any complaint of sexual harassment until February 25, 2003, at which time all acknowledge it was clearly made an issue. However, Ms. Butler filed an EEOC Charge of harassment against Mr. Horace in August 2002, receiving a "right to sue" letter from the EEOC in November 2002. It appears clear that at least the allegation of sexual harassment against Mr. Horace came to the attention of ALDOT through that Charge, and the need to respond to it, sometime in the early Fall of 2002, at the latest.

6. On February 25, 2003, a formal meeting was held with the employees supervised by Mr. Horace. At that meeting numerous and varied complaints of supervisor misconduct were made by the employees, and a number of them supported the allegations of Ms. Butler as to the sexual harassment she had suffered from Mr. Horace. As a result Mr. Horace was immediately removed as the supervisor of Ms. Butler and the others, and an investigation of his alleged misconduct was undertaken. On March 27, 2003, in a formal termination recommendation to Mr. Roger Collier, Sixth Division Engineer (Defendant's Exhibit 5), it was concluded that the allegations of sexual and racial harassment, and even of violence in the work place, had all been shown to be probably true, and it was the recommendation of Mr. Waits that Mr. Horace be terminated. Mr. Horace was then terminated on or about April 18, 2003.

7. This action was effective and it was quick. Had this story ended here, this Hearing Officer would find nothing to criticize on the part of ALDOT. While this problem may well have existed since 2001, and Ms. Butler claimed she was being retaliated against by Mr. Horace, there was an established Sexual Harassment Policy And Complaint Procedure, Ms. Butler had filed previous grievances and clearly knew how and who to complain to, and it does not appear she was in fact intimidated in taking action in her own behalf at any time. She was even encouraged by upper management, including Mr. Waits, to file a grievance on more than one occasion. There are no witnesses to sexual harassment occurring any time significantly before early 2003, so as to evidence such widespread and open problems as to put the ALDOT on notice. An employer cannot simply terminate a supervisor with nothing more than general unsworn allegations the accuser is not prepared to stand by. There is absolutely no evidence of any *quid pro quo* discrimination. I would thus feel ALDOT had responded appropriately, and that I should not second guess its failure to also review Ms. Butler's earlier Employee Performance Appraisals.

8. However, the story does not end here. After the meeting of February 25, 2003, and the written termination recommendation of March 27, 2003, upper management, apparently above Mr. Waits, with full knowledge of this situation, and after Ms. Butler utilized the Sexual Harassment Policy And Complaint Procedure, obviously "dropped the ball" by making the decision to solicit Mr. Horace to perform the annual Employee Performance Appraisal for Ms. Butler. And so on April 10, 2003, Mr. Horace, knowing full well of the complaint of Ms. Butler against him, and of the consequences he was already suffering, evaluated Ms. Butler (Plaintiff's Exhibit 1 and 2; Defendant's Exhibit 4), giving her a performance appraisal score of 17.50.

9. The evidence shows Ms. Butler was evaluated eight (8) times over eight (8) years by five (5) different supervisors. Four (4) yearly evaluations were by four (4) different supervisors, and Ms. Butler's last four (4) evaluations were all by James Horace. Referring to the post-hearing submission of ALDOT, dated August 27, 2004, page 4, there is an organized summary of these evaluations. They are as follows in part:

| YEAR | SCORE | SUPERVISOR |
|---|---|---|
| 1996 | 30.0 / Exceeds Standards | Other than Mr. Horace |
| 1997 | 28.3 / Exceeds Standards | Other than Mr. Horace |
| 1998 | 32.9 / Exceeds Standards | Other than Mr. Horace |

10/05/2004  03:49   2059305370                SIROTE                                    PAGE  08

| 1999 | 26.7 / Exceeds Standards | Other than Mr. Horace |
| 2000 | 26.7 / Exceeds Standards | Mr. Horace |
| 2001 | 27.5 / Exceeds Standards | Mr. Horace |
| 2002 | 25.0 / Meets Standards | Mr. Horace |
| 2003 | 17.5 / Meets Standards | Mr. Horace |

10. The mathematical analysis of these is interesting. Ms. Butler's low score of 17.50 was 7.50 points and 30% below the lowest score Ms. Butler had ever received, and that other score was the one Mr. Horace had given her the year before, which was also during the time Ms. Butler claims he was already sexually harassing and retaliating against her. Those two (2) scores were the lowest ones Ms. Butler had over the eight (8) years shown in the evidence, and throwing them out and averaging the remaining six (6) scores in evidence, her average score is 28.68. This average includes two (2) evaluations by Mr. Horace, prior to the time he is alleged to have engaged in his wrongful actions. Four (4) of five (5) supervisors rated Ms. Butler as "Exceeds Standards". Only Mr. Horace ever rated her less than that, and even he rated her as having exceeded standards the first two (2) years. Ms. Butler's average score for the other four (4) supervisors is 29.475. Her score even increased from the first to the second year under Mr. Horace. However, it then dropped significantly after she testified the sexual harassment began, and then even more drastically after he knew she had effectively complained about him.

11. It is frankly surprising to me that after having complained to upper management of such sexual harassment and retaliation, Ms. Butler was made to endure such clear and obvious retaliation at the hands of Mr. Horace, even as he was being terminated for his actions against her, inter alia. That this decision was made by higher upper management at ALDOT makes it even more surprising. This certainly brings to mind the famous "parthian shot".

12. This is a situation that calls out for relief. As of February 25, 2003, there could be no doubt that ALDOT knew fully of Mr. Horace's alleged sexual misconduct and the fears of his retaliation against those employees, most particularly Ms. Butler. Yet, even after the recommendation was made to terminate him for cause on March 27, 2003, he was solicited to evaluate Ms. Butler, which he did on April 10, 2003. And then, he was terminated on or about April 18, 2003. And yet when Ms. Butler wrote her letter of rebuttal of May 8, 2003 (Last two (2) pages of Plaintiff's Exhibit 1), nothing was done even then to correct the situation. I find her rebuttal to have been clear and articulate, and had even minimal review of it been had, it is hard to understand how this would not have been corrected at least at that point. The fact that it was not convinces me that there was no such review in fact of her 2002 evaluation as well, and that I should go as far as I feel comfortable with in recommending this wrong be righted.

13. I am clear that Ms. Butler's last score of 17.50 was clearly the result of obvious retaliation against her by Mr. Horace, and it is indefensible in my view. Under the circumstances, and in view of the foregoing analysis, I also feel the score of 25.00 for the previous year of 2002 should in all fairness and justice be changed. Mr. Horace affirmatively demonstrated in my view

that he saw the Employee Performance Appraisal as a means of retaliation. The issue I must struggle with is what would be a fair score under all the circumstances. In addition to the two (2) averages of 29.475 and 28.68 already mentioned, I note that the range of scores for "Meets Standards" is 16.7 - 26.6, and that the range of scores for "Exceeds Standards" is 26.7 - 36.6 (See Defendant's Exhibit 4). As a practical matter, the particular score is less important for employees than is which range that score is in, based upon discussions with counsel for ALDOT/Defendant.

14. Prior to the time Ms. Butler alleges sexual harassment and retaliation, five (5) of five (5) supervisors had always graded her as in the range "Exceeds Standards". Even Mr. Horace did so for 2000 and 2001. This convinces me that a fair score under all the circumstances would be at a minimum, 26.7 for both 2002 and 2003.

15. Ms. Butler also seeks compensatory damages for her medical expenses and for mental anguish. There was no simply no proper proof of any medical injury, so as to justify any recovery for medical expenses, there was no expert opinion evidence, and further, Ms. Butler never made any claim for workers compensation. Ms. Butler had other medical problems. I am clear there is simply nothing in the evidence to support such a recovery, without my first engaging in raw speculation, and I decline to do that.

15. The claim for mental anguish is not so simple, since the proof does not require expert testimony. It would not be unusual to expect that poor evaluations under these circumstances could cause mental anguish. However, that evidence is far from clear or convincing, Ms. Butler bases a substantial portion of her claimed mental anguish upon her physical illnesses, and Mr. Horace was immediately removed as her supervisor, once she filed a Grievance, and he was thereafter terminated. Vindication came quickly for Ms. Butler after she did finally file a formal complaint under the sexual harassment policy. Further, in view of my findings here, I expect that Ms. Butler will receive any raise to which she is entitled, and I feel this is sufficient.

16. Under the circumstances I need not reach any opinion as to the authority of Hearing Officers to award compensatory damages, and I do not.

17. Ms. Butler also requests punitive damages; I do not believe I have any power under any circumstances as a Hearing Officer to award punitive damages as against the State, and I so find.

Accordingly, I recommend that the 2002 and 2003 Employee Performance Appraisals for Ms. Butler be immediately raised from 25.00 and 17.50 to 26.70, and that it be so noted in Ms. Butler's permanent record, so that those tainted evaluation scores in no way adversely affect her in her future employment with ALDOT or otherwise. I further recommend this all be done retroactively to April 29, 2002, and that any and all benefits to which Ms. Butler would thus be entitled, including any raises, be fully accorded to her. As I understand the freeze on merit pay raises, Ms. Butler would not be entitled to any raise since April 1, 2003. If her revised evaluation score for 2002 would have entitled her to a raise before that wage freeze took effect, then it is my recommendation that she be given that raise, retroactively to the date it would have been paid. Because I find no valid reason for Ms. Butler to have delayed in the filing of her Grievance, so as

to have substantially contributed to this delay, I decline to recommend that any interest be paid on any raise, provided it is paid in full within thirty (30) days of this date. Should it not, and this recommendation be later upheld, it is my recommendation that interest be awarded on that sum from this date until paid at the legal rate.

    IT IS SO FOUND AND RECOMMENDED THIS, THE 8th DAY OF SEPTEMBER, 2004.

                                       John T. Robertson, IV, Esq.
                                       Hearing Officer

Copies to:

| | |
|---|---|
| Steven L. Atha, Esq.<br>Wiggins, Childs, Quinn & Pantazis, P.C.<br>The Kress Building<br>301 19th Street North<br>Birmingham, AL 35203<br>(205) 254-1500 facsimile | Copy of Findings of Fact and Recommendations |
| Michael Cooper, Esq.<br>Fitzpatrick, Cooper & Clark<br>1929 Third Avenue, North, Suite 600<br>Birmingham, Alabama 35203<br>(205) 329-7444 facsimile | Copy of Findings of Fact and Recommendations |
| Sandi Dietz<br>Title VII Coordinator<br>Alabama Department of Transportation<br>1409 Coliseum Blvd.<br>Montgomery, AL 36130-3050<br>(334) 264-4359 facsimile | Original of Findings of Fact and Recommendations |
| Jim R. Ippolito, Jr., Esq.<br>Chief Counsel<br>Alabama Department of Transportation<br>1409 Coliseum Blvd.<br>Montgomery, AL 36130-3050<br>(334) 264-4359 facsimile | Copy of Findings of Fact and Recommendations<br>Via Ms. Sandi Dietz |
| David R. Mellon, Esq.<br>SIROTE & PERMUTT<br>P. O. Box 55727<br>Birmingham, Alabama 35255-5727<br>(205) 930-5101 facsimile | Copy of Findings of Fact and Recommendations |