

# ALABAMA DEPARTMENT OF TRANSPORTATION
SIXTH DIVISION
OFFICE OF DIVISION ENGINEER
POST OFFICE BOX 8008
1525 Coliseum Boulevard
MONTGOMERY, ALABAMA 36110
TELEPHONE: (334) 269-2311
FAX: (334) 263-2599

Bob Riley
Governor

Joe McInnes
Transportation Director

October 5, 2005

Mr. Joe McInnis
Director
Department of Transportation
Montgomery, AL

Attention: Ron Green

Dear Sir:

Re: Violence in the workplace Report
    Filed by Mrs. Karen Stacey against Ms. Alverene Butler

Attached is a copy of the investigation completed by Mr. Mark Waits and forwarded to me by Mr. Mark Waits, District Engineer.

Please advise if further information is needed.

Sincerely,

Randall A. Estes, P. E.
Division Engineer

RAE/jdf
Attachments
cc: Mr. Dan Morris
    File


DEFENDANT'S EXHIBIT W

 

**ALABAMA DEPARTMENT OF TRANSPORTATION**
SIXTH DIVISION
**OFFICE OF DISTRICT THREE ENGINEER**
POST OFFICE BOX 3097
**MONTGOMERY, ALABAMA 36109**
TELEPHONE: (334) 242-6572
FAX: (334) 834-7941

*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

September 30, 2005

### MEMORANDUM

TO:     Randall A. Estes, PE

ATTN:   Doug Furlow

FROM:   Mark T. Waits   *mw*

RE:     Workplace Violence Report Response
        Ms. Karen Stacey

Please find listed below my findings and recommendation in reference to the report filed by Ms. Stacey on September 12, 2005.

On Wednesday, April 6, 2005, Ms. Stacey informed her supervisor, Mr. Todd Jackson, of a situation she discovered that greatly disturbed her. Ms. Stacey (white employee) told Mr. Jackson that Ms. Alverene Butler (black employee) had been telling other black employees, for a couple of months, that Ms. Stacey had used a racial slur. In addition, Ms. Stacey stated that Ms. Butler had come to her telling her that one of the black employees, Mr. James Feagin, was threatening Ms. Stacey with bodily harm. Ms. Butler admitted that she did make such a statement, but it was made in a joking manner.

Ms. Stacey also told Mr. Jackson that she already knew that there was no real physical threat since she had spoken to Mr. Feagin, and he denied ever making any such statements. Ms. Stacey discovered that Ms. Butler had fabricated these threats and was ostracizing her from the black employees.

Mr. Jackson told Ms. Stacey he would look into her report and take the proper actions as necessary. During this period, from April 6 to April 15, Ms. Butler filed a complaint. Since the complaint was basically dealing with the same issue, we told Ms. Stacey that Ms. Butler's complaint investigation should satisfy both reports. Therefore, Ms. Stacey refrained from filing her report on the assumption the truth to her claims would come to light and proper actions would be initiated after Ms. Butler's complaint was resolved, if warranted.

As supported by my Initial Response Summary (attached), I found that Ms. Stacey was correct in her claims that Ms. Butler exhibited disruptive conduct. I discovered Ms. Butler continually went to only the black employees, informing them Ms. Stacey used racial slurs and Ms. Butler fabricated a physical threat from another employee towards Ms. Stacey.

It is my opinion that there has been no violation of the Department's *Workplace Violence Policy*, only where an employee was violating Employee Work Rules, i.e. Disruptive Conduct & Cooperation with Co-workers. Ms. Stacey was aware when she reported the incident on April 6, 2005, she was not being threatened, merely a fabrication of another employee. In addition, I have interviewed some of the project personnel and found that this "condition" does not presently exist.

Therefore, I am forwarding this to you for your review, consideration and further handling.

MTW/jlh

Attachments

cc:

Initial Response Attachment

    The following are my initial response pertaining to the complaint against Karen Stacey, Jesse Taylor and Todd Jackson:

1). This complaint is essentially based around an alleged racial slur that Ms. Karen Stacey made during an accident that involved Ms. Butler. On January 31, 2005, Ms. Butler elected not to file a complaint at that time but admitted she did convey the slur to two other employees, Ms. Julia Freeman and Mr. Melvin Wynn. Ms. Butler stated to me that she only discussed this matter only one other time from the date of the accident until April 11, 2005, and with no other employees. During my interviews, for the initial response, all the other employees (black) informed me that Ms. Butler repeatedly brought up the issue to them of the alleged racial slur, as many as ten times in the two month period. One employee stated he had asked her not to continue because he didn't want to get involved, yet she continued. None of the other employees stated they have ever heard Ms. Stacey use a racial slur.

2). Ms. Butler requests that a reprimand issued to her on April 13, 2005, for disruptive conduct, be removed because "personally feel that I am being treated this way because of retaliation of claim I've previously made against the Department" and lying for the Department about the accident". Ms. Butler has not previously filed any complaints while under the supervision of Mr. Jackson. In addition, Ms. Butler was not required to make any statements pertaining to the accident other than statements made in reference to her medical claim.

3). Ms. Butler stated to me she was somewhat aware of the complaint procedure for racial harassment, knew it was posted in visible areas and that she attended classes for it. I asked Ms. Butler why she did not file a complaint then and she said she tried to verbally tell Mr. Jackson. I asked her if she knew the protocol or chain-of-command if she was not satisfied and that she could file a written complaint. She said she did know that she wanted to "leave it alone and keep it to herself".

4). On April 6, 2005, Ms. Stacey came to my office informing me of a situation that had developed at the project office. She indicated she did not know how to handle it, I instructed her to go to her supervisor first. I later saw Mr. Jackson and told him he would be contacted by Ms. Stacey and to "look into it". Later that day, Mr. Jackson spoke to Ms. Stacey and explained he would try to resolve the problem. On Friday, April 8, 2005, Mr. Jackson discussed the issue with Ms. Butler and after hearing Ms. Butler's statements he decided to involve Mr. Furlow and myself. He told Ms. Butler what his plan was and he was <u>not going to discuss it with any other employees</u>, since he felt it might be a racial harassment issue.

5).  On Monday, April 11, 2005, at 7:00 a.m., Ms. Butler admits she approached Mr. ~~Jackson~~ [Johnson mw], Mr. Feagin and Mr. Taylor in an effort to discuss the racial slur incident. These employee's were unaware that Mr. Jackson was involved and was trying to resolve the complaint. Ms. Butler states that Mr. Taylor said "why don't you get her face to face in front of everybody and get it in the open". Mr. Taylor stated to me that he was tired of this going on, Ms. Butler continuing to bring it up, and wanted her to do whatever she needed to do in order to end it. Later that day he admitted to telling Karen that Rene had something to say. Some of the other employees I spoke with agreed they were tired of "hearing" of the same incident. I received conflicting stories during my interviews as to what actually was said or took place during Ms. Butler's and Ms. Stacey's discussion. However, it is apparent that this would not have taken place had Ms. Butler refrained from approaching the other EA's that morning.

Summary and Proposed Resolution:

Based on the information I received during my initial response interviews, I feel that Mr. Jackson acted properly issuing the reprimand. I did not find any discrimination based on race or retaliation. I do not feel any other employees should be disciplined. Mr. Jackson had discussed the complaint with Ms. Butler and informed her he was going to involve the appropriate personnel since he felt this may be a racial harassment complaint. Mr. Jackson told Ms. Butler that he had only spoken to Karen and herself about the complaint and was not going to talk with any other employees until he had involved Mr. Furlow and myself.

Ms. Butler had apparently continued to "bring the issue up" to the other employees throughout the two month period, even after some had asked her to stop. Ms. Butler was aware that Mr. Jackson was trying to resolve the complaint, on the morning of April 11, 2005, yet she brought the issue up to the other employees which in turn created the conflict on the jobsite.

In addition, I feel that Ms. Butler has created a possible hostile work environment with false statements when she admitted she approached Ms. Stacey about James Feagin stating "better talk to your home girl, every time I look around some mess is going on around here on the job, construction is a dangerous job". Mr. Feagin denied ever making that statement. Ms. Stacey said she finally went to Mr. Feagin and confronted him with it and that is when she discovered Ms. Butler was making statements to other black employee's about the racial slurs. I asked some of the other EA's about their working relationship with Ms. Butler and they indicated they were "uncomfortable" or intimidated in her presence, for they felt she would involve them a possible complaint or lawsuit.

ALDOT WPVR.1
12/01

# ALABAMA DEPARTMENT OF TRANSPORTATION
# WORKPLACE VIOLENCE REPORT FORM

Please complete the following information and return to:

Your immediate supervisor or ALDOT Human Resources Bureau, Central Office, 1409 Coliseum Blvd., Montgomery, Alabama 36130

1. Name: Karen Stacey
2. Job Classification and Title: EA II/III
3. Bureau or Division: Sixth
4. Section or District: Three / Construction
5. Name of Supervisor: Patrick Todd Jackson
6. Write below what happened:

Alverene Butler created an environment on the job that ostracized me from the black employees. Ms. Butler told (See attached)

(attach additional pages if necessary)

(a). When did it happen?

During March 2005 - originally reported to Mr Jackson, Mark Waits + Doug Furlow on 4/6/05.

(b). Where did it happen?

On jobsite

(c). Write below the person or persons who did the act or acts you are reporting:

Alverene Butler

ALDOT WPVF-1
12/01

7. List below anyone else who may have seen what happened or who you believe may have information about it:

James Feagin (deceased - written statement available) Jesse Taylor, Melvin Wynn, Kelvin Johnson, Patrick T. Jackson, Frank Hollifield, Eric Robbins

8. Were you affected by what happened? If so, how?

I was very upset, afraid for my life ⊛, worried about my job. My blood pressure was up, and I developed shingles in my head due to the stress. (See attached leave slips.)

_Karen Stacey_
Signature of Employee

9/12/05
Date submitted

Report submitted to: Patrick Todd Jackson

(⊛ pushed in traffic, hung, run over, shot)

Continued...

6. only the black employees that I said, during an accident on 1/31/05, (Partial Quotes) "Stupid Mother fucking nigger." "Stupid ass nigger" "I wished someone would hit him (black man). Ms Butler told me that James Feagin (black employee) said to her "Where's your fucking road dog?, If you care about her you had better watch her back before she gets strung up out here." Ms. Butler told me that the blacks were out to get me and "were gonna set me up on the job." It was over two weeks before I talked to James about what he supposedly said. He denied it and then he told me what she was saying about me to the black employees. Ms. Butler used me and James to get the whites and blacks in an hostile environment and a violent atmosphere.

LR-1
5/91

## REQUEST FOR LEAVE APPROVAL

Approval is hereby requested for leave as follows:

Leave Started Date: 3/21/05    Time: 7:00

Leave Ended Date: 3/21/05    Time: 4:00

For the following reason: upset stomach

Amount of hours to be charged as follows:

Vacation: _____ Hours    Other-Specify: _____ Hours

Sick: 8 Hours    Signed: Karen Stacey

3/22/05
Date    APPROVAL    Date Submitted: 3/22/05

_____    SSN: 7493
Date    DISAPPROVED

REASON    Call-in ☒

## REQUEST FOR LEAVE APPROVAL

Approval is hereby requested for leave as follows:

Leave Started Date: 3/25/05    Time: 7:00

Leave Ended Date: 3/25/05    Time: 4:00

For the following reason: DR. Appt

Amount of hours to be charged as follows:

Vacation: _____ Hours    Other-Specify: _____ Hours

Sick: 8 Hours    Signed: Karen Stacey

3/24/05
Date    APPROVAL    Date Submitted: 3/23/05

_____    SSN: 7493
Date    DISAPPROVED

REASON    Call-in ☐

LR-1
5/91

### REQUEST FOR LEAVE APPROVAL

Approval is hereby requested for leave as follows:

Leave Started Date: 4/26/05        Time: 7:00

Leave Ended Date: 4/26/05          Time: 4:00

For the following reason: Stress due to Hostile Woman. Environment / headache

Amount of hours to be charged as follows:

Vacation: _____ Hours            Other-Specify: _____ Hours

Sick: 8 Hours                    Signed: Karen Stacey

4/27/05                          Date Submitted: 4/27/05
Date    APPROVAL               
                                 SSN: 7493
_____
Date    DISAPPROVED

_____
REASON                           Call-in ☒

---

LR-1
5/91

### REQUEST FOR LEAVE APPROVAL

Approval is hereby requested for leave as follows:

Leave Started Date: 5/2/05         Time: 7:00

Leave Ended Date: 5/2/05           Time: 4:00

For the following reason: Shingles + H.B.P. (150/120)

Amount of hours to be charged as follows:

Vacation: _____ Hours            Other-Specify: _____ Hours

Sick: 8 Hours                    Signed: Karen Stacey

5/3/05                           Date Submitted: 5/3/05
Date    APPROVAL               
                                 SSN: 7493
_____
Date    DISAPPROVED

_____
REASON                           Call-in ☒ 7:03 to Danni