**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ALVERENE BUTLER,** | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | **Civil Case No. 2:06-CV-278-MEF-CSC** |
| | * | |
| **ALABAMA DEPARTMENT** | * | |
| **OF TRANSPORTATION, et al.,** | * | |
| **Defendants.** | * | |

<u>**PLAINTIFF'S RESPONSE TO THE DEFENDANTS'**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**COMES NOW** Plaintiff Alverene Butler ("Plaintiff"), by and through her

attorney of record, and would submit the following brief as her response to the defendants'

Alabama Department of Transportation ("ALDOT"), Joe McInnes ("McInnes"), Mark T. Waits

("Waits"), and Patrick Todd Jackson ("Jackson") motion for summary judgment as follows:

<u>**I.  STATEMENT OF THE CASE**</u>

In January, 1994, Plaintiff, a black female, began working for the Alabama Department of

Transportation in Montgomery, Alabama, as a clerical aide.  In or about June, 1994, Plaintiff was

promoted, as a provisional appointment, to an Engineering Assistant I.  On March 27, 1999,

Plaintiff was given permanent status as an Engineering Assistant.  In 1998, Plaintiff filed her first

EEOC charge of discrimination alleging retaliation.  On or about August 28, 2002, Plaintiff filed

a second EEOC charge of discrimination against the ALDOT stating that she had been subjected

to a hostile work environment, sexually harassed, racially discriminated and retaliated against in

her employment by her immediate supervisor, James Horace.  On or about April 27, 2005,

Plaintiff filed her third EEOC charge of discrimination against the ALDOT stating she was

1

discriminated against based on race and retaliation.  On or about June 23, 2005, Plaintiff filed her

fourth EEOC charge of discrimination against the ALDOT stating discrimination based on race

and retaliation.  Plaintiff received two right-to-sue letters for her last two EEOC charges of

discrimination on December 28, 2005.  Plaintiff filed this lawsuit *pro se* on March 28, 2006,

alleging racial discrimination and retaliation in her employment in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e, et seq., 42 U.S.C.A. § 1981, and 42

U.S.C. § 1983.  An amended complaint was filed on June 8, 2006, when Plaintiff retained the

undersigned counsel.  The defendants, in their answer, denied that they discriminated against

Plaintiff.

## II.  STATEMENT OF MATERIAL FACTS

1.      In January, 1994, Plaintiff, a black female, began work as a Clerical Aide for the Alabama

Department of Transportation in Montgomery, Alabama.  In June, 1994, Plaintiff began her

provisional appointment as an Engineering Assistant ("EA") with the ALDOT.  (Exhibit E, State

of Alabama–Personnel Department, Provisional Appointment).  Plaintiff's employment status

was changed to permanent in March, 1999.  (Exhibit F, State of Alabama, Personnel Department,

Permanent Status).  Plaintiff was promoted to an EA II/III and was an EA II/III at all times

relevant to this lawsuit.  (Exhibit A, Butler depo., 12:23-13:2).

2.      Plaintiff worked under the immediate supervision of Patrick Todd Jackson,

Transportation Technologist Senior (Project Engineer).  (Exhibit D, Jackson depo., 7:9-7:15).

Her next upstream supervisor was Mark Waits, Transportation Manager (District Engineer), who

also supervised Jackson.  (Exhibit B, Waits depo., 6:14-7:3; 7:17-7:23).  McInnes is the Director

of the Department and is the person who ultimately approved the adverse promotion actions

taken against Plaintiff.

3.     Jackson was also the direct supervisor of Karen Stacey (white female).  (Exhibit C, Stacey depo., 12:21-12:23; Exhibit D, Jackson depo., 9:18-9:21).  Plaintiff and Stacey, who both held the same position of EA II/III, worked together in the office and in the field.  (Exhibit C, Stacey depo., 13:19-14:5).

Plaintiff's early complaints about sexual harassment

4.     Plaintiff began complaining that her then supervisor, James Horace, was sexually harassing her in November, 2001.  She also filed an EEOC charge of discrimination (August 28, 2002), and a departmental grievance (February 26, 2003), against Horace.  (Exhibit 1, EEOC charge of discrimination, August 28, 2002).  Waits had been Horace's supervisor.  (Def. Brief, p. 2).  It was not until approximately March, 2003, that an investigation was conducted concerning Horace's alleged misconduct.  Horace was finally terminated on or about April 18, 2003.  (Def. Brief, p. 2-3).

5.     In her complaints about Horace as well as Robert Smiley [in 1998], Plaintiff complained about Waits because he took no action regarding her complaints.  (Exhibit A, Butler depo., 65:16-66:14).

Automobile Accident on January 31, 2005

6.     On January 31, 2005, Plaintiff and her co-worker Karen Stacey, while traveling together during work/lunch, were involved in an automobile accident with another vehicle in which Stacey (the driver) was determined to be at fault.  (Exhibit C, Stacey depo., 6:23-7:6; 37:19-37:20; Exhibit I, Ala. Uniform Traffic Accident Report).  Plaintiff was taken to the hospital. (Exhibit 2, EEOC charge of discrimination, April 27, 2005, p. 5).

7.      Plaintiff and Stacey both had different accounts of the auto accident.  Plaintiff stated that

Stacey hit the other vehicle.  (Exhibit 2, EEOC charge of discrimination, April 27, 2005, p. 5).

Stacey claimed that the other vehicle hit her.  (Exhibit C, Stacey depo., 17:4-18:2; 39:2-39:8).

Plaintiff also stated that after the accident Stacey said, "Did you see that stupid mother fucking

nigger hit me?"  Stacey denied ever making that statement or other racial slurs.  (Exhibit C,

Stacey depo., 18:11-18:15; Exhibit A, Butler depo., 48:23-49:3; Exhibit D, Jackson depo., 33:3-

33:20).

8.      While Plaintiff was at the hospital (because of the auto accident), Jackson arrived.

Plaintiff attempted to tell Jackson about the racial slurs that Stacey used, but Jackson did not

want to hear it and would not let Plaintiff continue.  (Exhibit 3, Wynn affidavit, ¶ 5; Exhibit 2,

EEOC charge of discrimination, April 27, 2005, p. 5).  Jackson does not recall Plaintiff trying to

talk to him about the accident or for that matter if he talked with her at all.  (Exhibit D, Jackson

depo., 41:2-41:15).

<u>Confrontation on April 11, 2005</u>

9.      In early April, 2005, Stacey had heard from a co-worker that Plaintiff had told some

employees about the accident being Stacey's fault and that Stacey used racial slurs.  (Exhibit C,

Stacey depo., 19:2-19:13; 25:5-25:18).  Then sometime after finding this out, Stacey told Jackson

that Plaintiff was saying Stacey used racial epithets.  (Exhibit B, Jackson depo., 14:18-16:20).

Jackson then had a conversation with Plaintiff regarding the accident.  Jackson asked Plaintiff if

Stacey used the racial epithets.  Plaintiff said yes.  Jackson also allegedly asked Plaintiff if she

had been harmed in any way and Plaintiff allegedly stated that she "had forgot it as soon as it

happened."  (Exhibit D, Jackson depo., 14:18-16:20; 32:22-34:4).  Plaintiff disputes that she ever

told Jackson she forgot the incident (and the derogatory language Stacey used) as soon as it happened. (Exhibit A, Butler depo., 48:23-49:14). Jackson admitted in testimony that he had no reason to disbelieve Plaintiff was telling him the truth when he asked if Stacey had said the racial epithet. (Exhibit D, Jackson depo., 32:22-34:4).

10.     Waits learned of the alleged racial slurs made by Stacey from Jackson on or about April 8, 2005. (Exhibit 3, Waits depo., 9:4-10:5).

11.     On April 11, 2005, Plaintiff and Stacey had a confrontation at a job-site. According to Wynn and Johnson, who both witnessed the confrontation, Stacey was the aggressor, confronting Plaintiff and yelling at her. Stacey accused Plaintiff of lying about the accident and saying that she used racial slurs when she did not. Plaintiff did not initiate the conflict. (Exhibit 4, Johnson affidavit, ¶ 4; Exhibit 3, Wynn affidavit, ¶ 3; Exhibit 2, EEOC charge of discrimination, April 27, 2005, p. 7). Plaintiff maintained to Stacey that she did use racial slurs at the time of the accident. (Exhibit C, Stacey depo., 20:4-20:10). Stacey claimed she did not initiate the conversation with Plaintiff; Stacey was merely doing her work when Plaintiff came over to her and said Stacey had used racial slurs. (Exhibit C, Stacey depo., 22:1-22:5).

12.     After the confrontation, Stacey called for Jackson to come to the job-site. When Jackson arrived on the scene, he and Stacey had a private conversation about the incident. Plaintiff wanted to tell him her side of the story, but Jackson refused to listen to her and would not permit her to speak. (Exhibit 3, Wynn affidavit, ¶ 3). Jackson told Plaintiff to "hush," and "just be quiet." (Exhibit 2, EEOC charge of discrimination, April 27, 2005, p. 7). Jackson claimed he "did not ask for question or comments at the time;" there was work to be done. That was the only reason why he did not want to hear Plaintiff's side of the story. (Def. brief, p. 6; Exhibit D,

Jackson depo., 35:5-35:20).

13.     Plaintiff did not file a formal grievance regarding the racial slur because, as she told

Jackson, "Waits was not going to do anything about it."  Plaintiff had complained to Waits

before about her then direct supervisor [Horace] sexually harassing her and Waits did nothing at

the time to stop it.  It was not until approximately one and a half years after filing her initial

complaint that an investigation was finally conducted, ending in Horace's termination.  (Exhibit

A, Butler depo., 96:19-97:6; 97:20-99:11).

Plaintiff's reprimand on April 13, 2005

14.     Plaintiff was issued a reprimand from Jackson on April 13, 2005, regarding the

confrontation on April 11, 2005.  Plaintiff was charged with violating the following work rules:

"[i]nattention to job-doing anything distracting on the job" and "[d]isruptive conduct of any

sort."  (Exhibit Q, Reprimand, April 13, 2005).  Jackson told Plaintiff that she was being issued

the reprimand because she had asked co-workers that morning about the accident and because

Plaintiff caused a commotion on the job-site.  Jackson told Plaintiff that her co-workers said that

she was the one responsible for work being stopped.  Plaintiff maintains that she and her co-

workers were all working until Stacey confronted Plaintiff.  (Exhibit 2, EEOC charge of

discrimination, April 27, 2005, p. 7).

15.     Both Jackson and Waits now claimed during their testimony that Plaintiff was issued a

reprimand because she was told not to discuss the accident and racial slurs with other employees

yet she still did.  (Exhibit D, Jackson depo., 15:23-16:2; Exhibit B, Waits depo., 14:11-14:21;

16:7-16:19; 40:3-40:14; 41:5-41:13).  Plaintiff testified that Jackson had never told her not to

discuss the incident.  (Exhibit A, Butler depo., 47:1-47:4).  The reprimand also does not state that

it was issued because Plaintiff disobeyed Jackson's order not to discuss the incident. (Exhibit Q, Reprimand, April 13, 2005). Contrary to the defendants' brief that "Butler admitted discussing the matter with other employees *after being told* by Jackson not to," that is not what the questionable evidence defendants cite to states. These notes, which Waits typed up after speaking to Butler, state that "[s]he acknowledged Todd was aware and was in the process of working on it." (Def. brief, p. 7; Exhibit T, Attachment 1, at 15) (emphasis added). No where does it state that she admitted talking about the matter when specifically told by Jackson not to discuss it.

16.    Stacey was never issued a reprimand for the confrontation. (Exhibit C, Stacey depo., 27:5-27:7; Exhibit D, Jackson depo., 24:20-24:21). Stacey admitted to having confrontations with other co-workers over the years that she was employed with ALDOT. (Exhibit C, Stacey depo., 44:7-44:10).

17.    At some time following the confrontation, Waits called Kelvin Johnson, black male, in to ask his opinion about Plaintiff's treatment. Johnson told him that Plaintiff was generally being treated unfairly. (Exhibit 4, Johnson affidavit, ¶ 5).

18.    Waits stated that he had asked Stacey if she had used any racial slur and she said she had not. (Exhibit B, Waits depo., 39:8-39:17). Stacey, however, contradicts Waits, when she stated that Waits never came to her asking anything at all about Plaintiff. (Exhibit C, Stacey depo., 29:1-29:3).

19.    Waits also claimed that Melvin Wynn, black male, told him Plaintiff spoke to him about Stacey's racial slur four of five times. Wynn testified that he told Waits that Plaintiff only spoke to him once about the racial slur. (Exhibit 3, Wynn affidavit, ¶ 4). Wynn also told Waits that

while he had never heard Stacey use a racial slur, she did continually refer to Black people as "them" and "they."  Wynn also did not tell Waits that Plaintiff had "hindered" the work crew during the confrontation.  Wynn told Waits what had happened, that Jesse Taylor and Stacey had instigated the confrontation.  (Exhibit 3, Wynn affidavit, ¶ 4).

Plaintiff's Annual Performance Appraisal on April 14, 2005

20.     Plaintiff received her annual performance appraisal from Jackson on April 14, 2005. (Exhibit 2, EEOC charge of discrimination, April 27, 2005, p. 9).  Plaintiff received a performance appraisal with a final score of 10.5; her previous annual appraisal had been above 25.  Jackson told Plaintiff, "you know, a reprimand takes off a lot too."  (Exhibit 2, EEOC charge of discrimination, April 27, 2005, p. 9).

Plaintiff's EEOC charge of discrimination, April 27, 2005

21.     On or about April 27, 2005, Plaintiff filed her third EEOC charge of discrimination, complaining of race discrimination and retaliation regarding the auto accident, the confrontation, the letter of reprimand, and the annual appraisal.  (Exhibit 2, EEOC charge of discrimination, April 27, 2005).

Plaintiff's second reprimand on June 14, 2005

22.     Plaintiff was issued a second reprimand from Jackson on June 14, 2005.  This reprimand claimed that Plaintiff did not follow Jackson's instructions.  Plaintiff testified he had never so instructed her.  (Exhibit 5, Reprimand, June 14, 2005; Exhibit A, Butler depo., 36:17-37:20; 48:13-48:22).  Melvin Wynn witnessed the incident and testified that the instructions Jackson gave them were carried out.  Jackson then changed his mind about what he wanted done, then accused Plaintiff, Wynn and Reeser Knight, black female, of not following his instructions.

Jackson proceeded to yell at Plaintiff and Knight.  (Exhibit 3, Wynn affidavit, ¶ 9).

Plaintiff's EEOC charge of discrimination, June 23, 2005

23.     On or about June 23, 2005, Plaintiff filed her fourth EEOC charge of discrimination.

(Exhibit 6, EEOC charge of discrimination, June 23, 2005).

Previously approved leave taken from Plaintiff

24.     Plaintiff had leave that had been previously approved taken from her by ALDOT.

(Exhibit A, Butler depo., 33:7-33:9).  Stacey is not aware of ever having leave that was

previously approved disapproved later.  (Exhibit C, Stacey depo., 32:13-32:16).  The

memorandum regarding "approved and disapproved leave," written by Waits, states that "this

office is reviewing all previous leave slips from April 8, 2005, in order to identify disapproved

leave for possible payroll corrections."  (Exhibit 7, Leave Memo, August 24, 2005).

Allowance to report to work at 7:30am instead of 7:00am rescinded as to Plaintiff, not Stacey

25.     Prior to the confrontation that Stacey instigated, Plaintiff and Stacey had been permitted

to come to work at 7:30am instead of the regular start time of 7:00am so that they could drop

their children off at school.  (Exhibit D, Jackson depo., 12:20-13:11).  After the confrontation,

the allowance was rescinded as to Plaintiff and she was required to be at work by 7:00 a.m.;

Stacey was still permitted to report late.  (Exhibit 4, Johnson affidavit, ¶ 7; Exhibit 3, Wynn

affidavit, ¶ 7; Exhibit C, Stacey depo., 29:12-29:20).  Stacey testified that there was no policy

change at any point in which she was no longer permitted to come to work a few minutes late in

the morning so that she could take care of childcare issues.  (Exhibit C, Stacey depo., 30:6-30:9).

Contradicting Stacey, Jackson testified that at some point the policy changed and neither Plaintiff

nor Stacey were permitted to come in at 7:30am; they both had to be at work at 7:00am.  Jackson

also testified that Stacey did indeed come in at 7:00am, the same time as Plaintiff. There was never a time that Plaintiff was required to be at work at 7:00am and Stacey was allowed to come in at 7:30am. (Exhibit D, Jackson depo., 13:12-13:20; 32:16-32:21).

Call-In restrictions as to Plaintiff, not Stacey

26.    On August 29, 2005, Jackson instituted a new policy restricting call-ins to one per month. (Exhibit 8, Call-In Memo, August 29, 2005). Stacey was allowed to violate that policy regularly, calling in sick and for personal business on numerous occasions. Plaintiff was not allowed to do so and was written up when she called in. (Exhibit 3, Wynn affidavit, ¶ 6; Exhibit 4, Johnson affidavit, ¶ 6).

27.    In or about August, 2005, Plaintiff received counseling letters accusing her of using too much leave time and violating call-in procedures. (Exhibit 9, Letters of written counsel, August 30, 2005). Jackson admitted in his testimony that Plaintiff's leave time never got down to zero (Plaintiff never used up all her leave time). (Exhibit D, Jackson depo., 40:21-41:1).

Post accident report, time sheets scrutinized

28.    On several occasions, after Plaintiff reported that Stacey had falsified a report on the January, 2005 automobile accident and used a racial slur, Jackson began scrutinizing Plaintiff's time sheets closely. Jackson pointed out that Stacey had reported to him that Plaintiff had not worked the hours logged. (Exhibit 3, Wynn affidavit, ¶ 2). Jackson would change the hours Plaintiff put down as having worked the following day, claiming Stacey told him Plaintiff did not work the hours she claimed. (Exhibit A, Butler depo., 26:15-26:19). Stacey could not have known what hours Plaintiff worked since Stacey was almost always gone when Plaintiff and her crew arrived back at the office from the field. (Exhibit 3, Wynn affidavit, ¶ 2). While Plaintiff

never heard Stacey tell Jackson personally that Plaintiff had not worked the hours she claimed,

Plaintiff did hear Stacey tell Jackson that other employees claimed hours which they did not

work.  (Exhibit A, Butler depo., 27:1-27:4).  Stacey denied ever suggesting to Jackson that

Plaintiff had not worked the hours she claimed to have worked.  (Exhibit C, Stacey depo., 15:14-

15:17).  Jackson does not remember if he ever deducted hours from Plaintiff's time sheet.

(Exhibit D, Jackson depo., 30:12-30:14).  Jackson also does not remember if Stacey ever told

him that Plaintiff had not worked the hours she claimed on her time sheet.  (Exhibit 2, Jackson

depo., 30:15-30:18).

Performance of manual labor

29.    Plaintiff performed manual labor (including making concrete cylinders, and taking soil

compactions) as part of her job as an EA II/III.  Stacey, who was also an EA II/III, did not

perform manual labor.  (Exhibit A, Butler depo., 22:3-22:18; 22:23-23:3).  Plaintiff worked with

Stacey long enough to observe whether Stacey ever performed any manual labor.  Plaintiff's

observation was that Stacey did not do any manual labor.  (Exhibit A, Butler depo., 130:1-130:7).

Stacey also told Plaintiff that she did not do soil compactions.  (Exhibit A, Butler depo., 23:10-

24:2).  Stacey claimed she did perform manual labor, the same as Plaintiff.  (Exhibit C, Stacey

depo., 14:21-15:1; 15:4-15:13; 35:18-35:21).

Plaintiff's non-selection for Civil Engineer

30.    During the course of her employment, Plaintiff received training and certification and was

qualified to be promoted from Engineering Assistant (EA) to Civil Engineer (CE).  In or about

October, 2004, a position for CE came open.  Plaintiff was denied the promotion to CE, and the

position was given to a white male of lesser qualifications whom Plaintiff had trained in his

11

previous position.  (Exhibit 3, Wynn affidavit, ¶ 8; Exhibit 4, Johnson affidavit, ¶ 9;).  In or

about November, 2005, another CE position came open.  Plaintiff's application for promotion

was again denied and the position was offered to Karen Stacey, white female.  (Exhibit A, Butler

depo., 15:11-16:17; Exhibit C, Stacey depo., 35:22-36:16).

Other disputed material fact

31.    Jackson told Plaintiff to "watch herself" because Waits was after her.  (Exhibit A, Butler

depo., 60:1-60:8; 78:20-79:4).  Jackson said to be careful what she was doing because Waits was

"gunning for her.  And you know Mark [Waits], when he is gunning for someone, he gets his

man."  (Exhibit A, Butler depo., 61:17-61:21).  Jackson denies ever saying to Plaintiff that Waits

was out to get her or anything like that.  (Exhibit D, Jackson depo., 9:22-10:4; 17:23-18:14).

32.    Waits claimed that he did not talk to any co-workers about Plaintiff after she had been

transferred to their project office.  (Exhibit B, Waits depo., 22:9-22:10).  Kelvin Johnson testified

that when Plaintiff was transferred into their office, she was treated as a potential troublemaker.

Waits even called Johnson into his office to ask him if he observed any problems with Plaintiff's

behavior and whether he felt that Plaintiff was being treated badly.  (Exhibit 4, Johnson affidavit,

¶ 2).

Plaintiff's work performance

33.    Both Wynn and Johnson testified that, based on their ongoing opportunity to observe

Plaintiff's work performance and work ethic, they believed her to be an excellent worker and

well qualified for the position she held.  (Exhibit 3, Wynn affidavit, ¶ 8; Exhibit 4, Johnson

affidavit, ¶ 9).  Even Stacey testified that when she and Plaintiff were together she observed

Plaintiff doing her job and doing it well.  (Exhibit C, Stacey depo., 14:13-14:17).

Plaintiff's application for disability retirement

34.    Plaintiff applied for disability retirement because the conditions at work were intolerable. Plaintiff was caused considerable mental and emotional anguish, loss of sleep and other physical symptoms.  (Exhibit 6, EEOC charge of discrimination, June 23, 2005).  Plaintiff was approved for disability retirement from the ALDOT effective January 1, 2006.  (Exhibit J).  Plaintiff's Report of Disability also states, by Dr. Lester, in response to "List the objective findings that render the applicant permanently incapacitated to perform the normal functions of his/her duty:" that "Ms. Butler exhibits severe back pain, migraine headaches, anxiety-disorder, fibromyalgia and #TN."  (Exhibit N).

## III.  LEGAL ARGUMENT

## A.  SUMMARY JUDGMENT STANDARD

Under the provisions of Rule 56 ( c), F.R.C.P., summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Celotex v. Cattret*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant "always bears the initial responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact."  *Id*.

After the movant has met its burden under Rule 56( c ), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*.  In ruling, the Court "must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

In entertaining a motion for summary judgment, the court should review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but the court may not make credibility judgments or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence supporting the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, pp. 299-300 (2d Ed. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

In an employment discrimination case, the court is required to consider the evidence supporting the plaintiff's prima facie case and any such evidence tending to undermine the defendant's nondiscriminatory explanation. The existence of a prima facie case combined with sufficient evidence for the trier of fact to disbelieve the defendant's proffered nondiscriminatory reason for the employment action it took is sufficient for the trier of fact to infer the ultimate fact of discrimination. *Reeves*, at 147.

## B.  ARGUMENT-PROPER DEFENDANTS UNDER TITLE VII

Plaintiff has not brought a claim under Title VII against Defendants McInnes, Waits and Jackson. Plaintiff agrees with the defendants that only the employer may be sued under Title VII. To reiterate, Plaintiff is only suing the ALDOT for race discrimination under Title VII. Plaintiff does however, bring claims of race-based discrimination and retaliation against McInnes, Waits and Jackson by way of 42 U.S.C. § 1983, as it subsumes 42 U.S.C. § 1981, for a deprivation of

14

Plaintiff's civil rights under color of state law.

## C.  ARGUMENT-ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFF'S 1983 ACTION AGAINST ALDOT

_____Plaintiff agrees with the defendants that she cannot sue the ALDOT under a 1983 cause of action.

## D.  ARGUMENT-QUALIFIED IMMUNITY

The defendants claim Waits and Jackson are entitled to qualified immunity with regard to Plaintiff's claims under 42 U.S.C. § 1983.  However, the defendants only argued that Waits and Jackson are entitled to qualified immunity "with regard to any claim of retaliation asserted pursuant to the equal protection clause."  (Def. brief, p. 14).  These defendants did not argue that they were entitled to qualified immunity with regard to Plaintiff's claims of procedural due process.  (Exhibit 8, First Amended Complaint, ¶ 30).  These defendants also did not argue that they were entitled to qualified immunity as to Plaintiff's claims of race discrimination under the equal protection clause.  (*Id.*).  Therefore, those claims (procedural due process and race discrimination under the equal protection clause) stand as uncontested for qualified immunity purposes.

## E.  ARGUMENT-RETALIATION CLAIMS

In order to prove retaliation, a Plaintiff first must establish a *prima facie* case, by showing (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between her protected activities and the adverse employment action.  *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir.1995).  After Plaintiff establishes her *prima facie* case, the burden then shifts to

the defendants to produce a legitimate, non-discriminatory reason for Plaintiff's adverse

employment action. *Williams v. Russell Corp.*, 218 F. Supp. 2d 1283, 1295 (M.D.Ala.2002); see

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The burden then shifts back to

Plaintiff to provide evidence sufficient for a reasonable fact finder to conclude that the

defendants' reason was pretext for retaliation.

As the Eleventh Circuit held in *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957 (11th

Cir. 1997), "[u]nder the established rule of law in this Circuit, a plaintiff can survive a motion for

summary judgment or for judgment as a matter of law simply by presenting evidence sufficient to

demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate,

nondiscriminatory reasons." *Evans*, 131 F.3d at 964-65.

The factfinder's disbelief of the reasons put forward by the defendant (particularly if

disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the

*prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's

proffered reasons will permit the trier of fact to infer the ultimate fact of intentional

discrimination, and "[n]o additional proof of discrimination is required." *Combs v. Plantation*

*Patterns,* 106 F. 3d 1519, 1529 (11th Cir. 1997) (quoting *Hicks v. St. Mary's Honor Ctr.,* 970 F.

2d 487, 493 (8th Cir. 1992). Plaintiff can demonstrate the defendants' employment decisions are

not worthy of belief by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies,

or contradictions" in the proffered explanation. *Jackson v. Ala. State Tenure Comm'n,* 405 F. 3d

1276, 1289 (11th Cir. 2005).

Plaintiff maintains she was retaliated against when she suffered various disciplinary

actions, previously approved leave and hours worked were rescinded, and perquisites were

rescinded.

Plaintiff engaged in "protected activity" when she complained to Jackson and Waits about the racial epithets Stacey used at the automobile accident[1], and when she filed EEOC charges of discrimination on April 27, 2005 and June 23, 2005.

Plaintiff suffered adverse employment actions when:

1) She was issued a written reprimand on April 13, 2005,

2) She received a low annual performance appraisal on April 14, 2005,

3) She was issued a written reprimand on June 14, 2005,

4) Previously approved leave was taken away from her (resulting in adverse paycheck correction),

5) Her reporting to work at 7:30am was rescinded,

6) Her time sheets were scrutinized and Jackson, without valid reason, changed Plaintiff's hours,

7) She received letters of written counseling, and

8) She was not selected for two Civil Engineer positions.

Next, Plaintiff must establish that the decision maker had knowledge of her protected activity, and that there was a causal connection between her protected activity and the adverse employment action. *Brungart v. BellSouth Telecommunications, Inc.,* 231 F. 3d 791, 799 (11th Cir. 2000). It is well established in the Eleventh Circuit that the causal link requirement in a retaliation case is to construed broadly. *EEOC v. Reichhold Chem., Inc.,* 988 F. 2d 1564, 1571-

---

[1] Plaintiff attempted to tell her supervisor, Jackson, about the racial slur at the time of the accident while she was in the hospital, but Jackson refused to listen. Ultimately, Plaintiff complained about the language approximately two months later (April, 2005).

72 (11th Cir. 1993) ("a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.").  To do so, a plaintiff must generally establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action."  *Id.*  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  However, the causal link is not the sort of logical connection that would justify a prescription that the protected participation did indeed prompt the adverse employment action.  If it were, the connection would rise to the level of direct evidence of discrimination.  *Hairston v. G'ville Sun Publishing Co.,* 9 F. 3d 913, 920 (11th Cir. 1993).

The decision makers in the adverse employment actions, Jackson and Waits, were both aware of Plaintiff's protected activity.  Additionally, all of the adverse employment actions occurred either immediately after Plaintiff reported that Stacey used racial epithets (April, 2005), or filed her last two EEOC charges (April 27, 2005 and June 23, 2005), or they occurred within two to four months of her protected activities.

Next, since Plaintiff has established her *prima-facie* case of retaliation, she will show why the defendants legitimate, non-discriminatory reasons for taking the adverse employment actions are pretext.

As to the reprimands and letters of counsel, the defendants claim they were issued because of Plaintiff's "steadfast refusal to comply with supervisory instruction and departmental policy."  Plaintiff has presented evidence to the contrary, that Plaintiff's reprimands were bogus

and not based on the facts.  For instance, it was Stacey that was the aggressor during the confrontation; Plaintiff did not initiate the conflict.  Jackson and Waits now both claim a reason which differs from what was written on the reprimand as to why Plaintiff received it. (Jackson told Plaintiff not to discuss the racial slurs with other employees and she did).  Plaintiff testified that Jackson never told her that.  The reprimand itself does not state that Plaintiff disobeyed Jackson's order not to discuss the incident.

As for the approved leave that was later taken away from Plaintiff, it strikes Plaintiff as odd that Waits decided, at the end of August, 2005, to review all previous leave slips from April 8, 2005, the date that Waits learned of the racial slurs.

The defendants failed to present a legitimate, non-discriminatory reason for the following adverse employment actions that Plaintiff suffered: the low annual performance appraisal on April 14, 2005, the rescinding of her reporting to work at 7:30am instead of 7:00am for child care issues, and the scrutinizing of her time sheets by Jackson, without valid reason, resulting in his altering Plaintiff's hours to her detriment.

Plaintiff has demonstrated that the defendants' employment decisions are not worthy of belief by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation.

Therefore, based on her *prima facie* case and showing that the defendants' legitimate, non-discriminatory reasons are pretext, Plaintiff has established her claims of retaliation against the defendants.

## F.  ARGUMENT-RACE DISCRIMINATION

**1.  Plaintiff has established a *prima facie* case of race discrimination**

19

Plaintiff contends that the defendant discriminated against her, a black employee, with respect to her being disciplined, and having a perquisite rescinded.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin..." 42 U.S.C. § 2000e-2(a). *Maynard v. Board of Regents,* 342 F. 3d 1281, 1288 (11th Cir.2003).

Title VII does not require the plaintiff "to prove directly that race or gender was the reason for the employer's challenged decision. Rather, in showing that the employer discriminated against him, [Plaintiff] may rely on direct or circumstantial evidence of discrimination." *Maynard*, 342 F. 3d at 1288. See also, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 526 (1993).

Since direct evidence of racial animus can be difficult to produce, it is appropriate to use the three-step burden shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze circumstantial evidence of discrimination. First, "the plaintiff must create an inference of discrimination by establishing a *prima facie* case. If he does so, the defendant must 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'...The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions." *Nix*, 738 F.2d at 1184. (quoting *McDonnell Douglas Corp.*, 411 U.S. 792 at 802); *see also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff must show: (1) that she belongs to a protected racial group; (2) that she was

subjected to an adverse employment action to which non-protected persons were not subjected; (3) that the adverse action was based on her race. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792,  93 S.Ct. 1817 (1973).

If a plaintiff chooses to make use of the *McDonnell Douglas* presumption, she initially does not need to present evidence from which the trier of fact could conclude that the adverse employment action taken against her was caused by improper discrimination.  Instead, she need only establish that (1) an adverse employment action was taken against her, (2) she was qualified for the job position in question, and (3) different treatment was given to someone who differs with regard to the relevant personal characteristic. *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999).

A plaintiff's *prima facie* case raises a presumption of illegal discrimination. *Burdine*, 450 U.S. at 254. *See also Hunter v. Citibank, N.A.*, 862 F.Supp. 902 (E.D.N.Y.1994), affirmed 60 F.3d 810, certiorari denied 116 S.Ct. 483, 516 U.S. 978, 133 L.Ed.2d 410.  (Upon a showing by Plaintiff that she has met his *prima facie* burden, an inference of discriminatory intent is raised). As a general rule, "[d]emonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997).[2]

The defendant argues that Plaintiff has not established his *prima facie* case because Plaintiff lacks a proper comparator for purposes of disparate treatment.  Plaintiff disagrees and states that Karen Stacey is a proper comparator.

---

[2] In the Eleventh Circuit, the satisfaction of the McDonnell Douglas test raises a "presumption," but not an "inference." *Walker v. Mortham*, 158 F.3d 1177, 1184, n. 10 (11th Cir. 1998).

Karen Stacey was an EA II/III just like Plaintiff.  Stacey was subject to the same time requirements as Plaintiff.  They are valid comparators because she is similarly situated to Plaintiff in all relevant respects.  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001) (citations omitted).  Plaintiff and Stacey, her white comparator, were involved in or accused of the same or similar conduct (for instance, the April 11, 2005 confrontation, and reporting to work at 7:30am instead of 7:00am to take care of child care issues) and Plaintiff was disciplined in different ways than the white comparator (Plaintiff was reprimanded and disciplined, and Plaintiff's start time of 7:30am was rescinded while Stacey's was not).  "Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples."  *Id.* (citations omitted).  There are only two differences between the comparator and Plaintiff: (1) the comparator was not disciplined after the confrontation that she instigated, and (2) the comparator is white.

Plaintiff has established a *prima facie* case.  Plaintiff, a black woman, was disciplined (and lost a perquisite) by the defendants in a job she was qualified to do, while a white Engineering Assistant was treated more favorably, in that she was not disciplined when she instigated a confrontation.

## 2. Penske's legitimate non-discriminatory reason is pretext

Plaintiff contends that the defendants' legitimate non-discriminatory reasons are pretext.  The defendant argues that its legitimate non-discriminatory reason for Plaintiff being

disciplined is the defendants' self-serving conclusion that Plaintiff was "steadfast" in her refusal "to comply with supervisory instruction and departmental policy." The evidence sufficiently shows that the confrontation was not initiated by Plaintiff. Nor was the second reprimand valid. The defendants' supposedly legitimate non-discriminatory reason for disciplining Plaintiff was not legitimate, nor was it reasonable and the defendants' "proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256 (1981) (citing *McDonnell Douglas,* 411 U.S. at 804-805).

The defendants, as stated in the retaliation section of the argument, have not presented a legitimate, non-discriminatory reason for rescinding Plaintiff's ability to report to work at 7:30am instead of 7:00am (while allowing Stacey to continue to report at 7:30am).

This foregoing evidence combined with Plaintiff's *prima facie* case establish the defendant's legitimate non-discriminatory reason as pretext. The defendants' determination that the confrontation was Plaintiff's fault is simply not believable or reasonable given the evidence in this case. In any event, there is a genuine issue of material fact as to that point.

Plaintiff submits that there are genuine issues of material fact making this case inappropriate for summary judgment. The Court is requested to deny the defendant's motion.

## G.  ARGUMENT-CONSTRUCTIVE DISCHARGE

To establish a claim for constructive discharge, a plaintiff must show that her working conditions were so unpleasant or difficult that a reasonable person in her position would be compelled to resign. *Peters v. Community Action Committee,* Inc., 977 F. Supp. 1428, 1436 (M.D. Ala., 1997) (quoting *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993)).

In the present case, Plaintiff attempted, at the time, to report racial slurs uttered by a co-worker, yet was not allowed by her supervisor. A couple of months later, after the incident was

23

reported, Plaintiff was subjected to the defendants' relentlessly taking various disciplinary actions against her without valid reason.  Ultimately, Plaintiff sought disability retirement and resigned in an effort to avoid the stress caused by the discriminatory and retaliatory conduct of the defendants toward her.  The resignation/disability retirement constituted a constructive termination.

Plaintiff has shown her working conditions were untenable.  Any reasonable person would have resigned and/or retired his position at ALDOT as well.

<u>CONCLUSION</u>

The history of racial discrimination at the ALDOT is so well known to this Court that it requires no elaboration.  *See Reynolds v. Alabama Dept. of Transp.*  The defendant's argument is rife with disputes as to material facts between the parties; therefore, the defendant is not entitled to summary judgment.

RESPECTFULLY SUBMITTED this __14th__ day of February, 2007.

/s/ JAY LEWIS
Jay Lewis
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
J-Lewis@JayLewisLaw.com
ASB-2014-E66J

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the _14th_ day of February, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

Harry A. Lyles
Assistant Attorney General

ALDOT
1409 Coliseum Blvd.
Montgomery, AL 36110


/s/ JAY LEWIS
Jay Lewis
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
J-Lewis@JayLewisLaw.com
ASB-2014-E66J