IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALVERENE BUTLER, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. 2:06-CV-278-MEF |
| | * | |
| ALABAMA DEPARTMENT | * | |
| OF TRANSPORTATION, et al., | * | |
| Defendant. | * | |

### AFFIDAVIT OF MELVIN WYNN

BEFORE ME, the undersigned authority, personally appeared MELVIN WYNN who is known to me and who, being first duly sworn upon his oath, did depose and say as follows:

"My name is Melvin Wynn. I am employed by the Alabama Department of Transportation and have been so employed for approximately eight years. At all times material hereto, I was working under the supervision of Todd Jackson and Mark Waits. One of my co-workers was Alverene Butler. I have personal knowledge of the facts contained in this affidavit.

"Once Ms. Butler reported that Karen Stacey, white female, had falsified a report of an automobile accident and used a racial slur, management began treating Ms. Butler differently. For example, Todd Jackson began scrutinizing her time sheets closely. I was present on several occasions when Jackson would point out that Stacey had reported to him that Ms. Butler had not worked the hours logged. There is no way that Stacey could have known that, since she was almost always gone when my crew – which included Ms. Butler – would arrive back at the office from the field.

"I was present when Stacey came to a location at which Ms. Butler was working and

1

EXHIBIT 3

confronted her about Ms. Butler's report. Stacey was definitely the aggressor at the urging of Jesse Taylor. Ms. Butler had exited her vehicle and was walking toward the rear of the vehicle while talking on her cell phone when Stacey came after her. Stacey told her, "If you've got something to say to me, you better say it." She repeated that demand, and added, "You know I didn't say that word." Ms. Butler responded, "I know what you said, you know what you said, and God knows what you said. I'm not going to lie; you know what you called that man." After that, Stacey started yelling at Ms. Butler and Ms. Butler responded. After that, Stacey called for Jackson to come to the scene. I personally saw a write-up in which Ms. Butler was reprimanded by Todd Jackson for that incident. To the best of my knowledge, Stacey was not reprimanded. In no way did Ms. Butler initiate the conflict; Stacey and Taylor did. When Jackson arrived on the scene, he and Stacey had a private conversation about the incident. Ms. Butler wanted to tell him her side of the story, but Jackson refused to listen to her and would not permit her to speak.

"I have been informed of the affidavit of Mark T. Waits in which he sets forth his account of an interview with me regarding the above incident. That account is incorrect in several respects. When he asked me whether I had ever heard Karen Stacey a racial slur, I told him that I had never heard her use a racial slur, but she continually referred to Black people as 'them' and 'they'. When he asked me about whether I had heard Ms. Butler accuse Stacey of using a racial slur, I did not tell him 'four or five times." Ms. Butler discussed Stacey's comment with me only once, and I so informed Mr. Waits. I did not tell Mr. Waits that Ms. Butler had 'hindered' the work crew. I told him what happened, that Taylor and Stacey has instigated the whole affair.

"With respect to the racial slur, Ms. Butler told me about it at the hospital immediately after the automobile accident. I advised her to tell Todd Jackson about it. I was present when

she attempted to do that while still at the hospital. Jackson said he didn't want to hear it and wouldn't let Ms. Butler continue.

"At one point, management established a policy by which employees were allowed to call in sick only once a month. Stacey was allowed to violate that policy regularly, calling in sick and for personal business on numerous occasions. Ms. Butler was not allowed to do so and was written up when she called in.

"Prior to the confrontation that Stacey instigated, both she and Ms. Butler were permitted to come in a few minutes late each day so that they could drop off their children. After the confrontation, Stacey was still permitted to report late, but Ms. Butler was required to report by 7:00 a.m., the regular starting time.

"I had an ongoing opportunity to observe Ms. Butler's work performance and work ethic, and I have sufficient experience to form an opinion of it. She was an excellent worker. She performed office work and outside work, was well qualified for the position she held, and she was qualified for promotion to Civil Engineer. During the period that Ms. Butler and I worked together, two Civil Engineer positions came open; the first promotion was given to a white male, and the second was offered to a white female, Stacey.

"Ms. Butler was generally treated unfairly by management. I observed a general air of disdain and hostility on the part of both Waits and Jackson toward Ms. Butler. They spoke to and about her in demeaning terms, sometimes more in how they spoke rather than what they said. On one occasion, for example, Jackson gave certain instructions to Ms. Butler, Reeser Knight, and myself. We carried out those instructions. Jackson changed his mind about what he wanted done, but he accused us of not following his instructions. He did not yell at me, but he yelled at

Ms. Knight and Ms. Butler."

Further deponent saith not.

_____
MELVIN WYNN, Affiant

SWORN TO and SUBSCRIBED before me this __3__ day of February, 2007.

_____
NOTARY PUBLIC, Alabama at Large

My commission expires __11/15/08__

4