IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALVERENE BUTLER,<br>Plaintiff, | *<br>*<br>* | |
| v. | * | Civil Case No. 2:06-CV-278-MEF |
| | * | |
| ALABAMA DEPARTMENT<br>OF TRANSPORTATION, et al.,<br>Defendant. | *<br>*<br>* | |

## AFFIDAVIT OF KELVIN JOHNSON

BEFORE ME, the undersigned authority, personally appeared KELVIN JOHNSON who is known to me and who, being first duly sworn upon his oath, did depose and say as follows:

"My name is Kelvin Johnson. Between September, 1999, and March, 2006, I was employed by the Alabama Department of Transportation. At all times material hereto, I was working under the supervision of Todd Jackson and Mark Waits. One of my co-workers was Alverene Butler. I have personal knowledge of the facts contained in this affidavit.

"When Ms. Butler was transferred into our project office, she was treated by management as a potential troublemaker. For example, I was told by James Feagin, Chief Inspector, to "watch out for Alverene," commenting that he was instructed to do so by Todd Jackson. On another occasion, Waits called me into his office to ask about whether I had observed any problems with Ms. Butler's behavior, and whether I felt that Ms. Butler was being treated badly. At that time, I told him no. Other than those and other minor matters, however, I did not observe any overt acts of discrimination with respect to Ms. Butler.

"Once Ms. Butler reported that Karen Stacey, white female, had falsified a report of an

1

EXHIBIT 4

automobile accident, however, things changed.

"I was present when Stacey came to a location at which Ms. Butler was working and confronted her about Ms. Butler's report. Stacey was definitely the aggressor. I personally saw a write-up in which Ms. Butler was reprimanded by Todd Jackson for that incident. To the best of my knowledge, Stacey was not reprimanded.

"At some time following that confrontation, Waits again called me in to ask my opinion about Ms. Butler's treatment. At that time, I told him that I felt that Ms. Butler was generally being treated unfairly.

"At one point, management established a policy by which employees were allowed to call in sick only once a month. Stacey was allowed to violate that policy regularly, calling in sick and for personal business on numerous occasions. Ms. Butler was not allowed to do so and was written up when she called in.

"Prior to the confrontation that Stacey instigated, both she and Ms. Butler were permitted to come in a few minutes late each day so that they could drop off their children. After the confrontation, Stacey was still permitted to report late, but Ms. Butler was required to report by 7:00 a.m., the regular starting time.

"I have personal knowledge of the fact that Jackson deducted time from Ms. Butler's time sheets, taking away previously-granted leave time.

"I had an ongoing opportunity to observe Ms. Butler's work performance and work ethic, and I have sufficient experience to form an opinion of it. She was an excellent worker; she was usually the first one to jump into a project in order to get it completed. She was well qualified for the position she held, and she was qualified for promotion to Civil Engineer. During the

period that Ms. Butler and I worked together, two Civil Engineer positions came open; the first promotion was given to a white male, and the second was offered to a white female, Stacey.

"Ms. Butler was generally treated unfairly by management. I observed a general air of disdain and hostility on the part of both Waits and Jackson toward Ms. Butler. They spoke to and about her in demeaning terms, sometimes more in how they spoke rather than what they said."

Further deponent saith not.

_____
KELVIN JOHNSON, Affiant

SWORN TO and SUBSCRIBED before me this 5th day of January, 2007.

_____
NOTARY PUBLIC, Alabama at Large

My commission expires 9/19/07