IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALVERENE D. BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:06-cv-278-MEF |
| | ) | (WO-Recommended for Publication) |
| ALABAMA DEPARTMENT OF | ) | |
| TRANSPORTATION, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alverene Butler (hereinafter "Plaintiff") brings suit against Defendants Alabama Department of Transportation (hereinafter "ALDOT"), Mark T. Waits (hereinafter "Waits") and Patrick T. Jackson (hereinafter "Jackson") (hereinafter collectively "Defendants").[1] Plaintiff alleges that Waits and Jackson retaliated and discriminated against her in violation of 42 U.S.C. § 1981 ("§ 1981"), via 42 U.S.C. § 1983 ("§ 1983"), and that ALDOT discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff seeks compensatory and punitive damages, declaratory judgment, equitable relief, and attorney's fees and costs. This cause is presently before the Court on Defendants' Motion for Summary Judgment (Doc. # 25) and Motion to Strike (Doc. # 35). The Court has carefully considered the pleadings, briefs, and evidentiary submissions. For the reasons that follow, Defendants' motions are due to be GRANTED IN PART and DENIED IN PART.

---

[1] Plaintiff has abandoned her claims against Joe McInness. (*See* Doc. # 47 at 9.) Defendants' Motion is therefore due to be GRANTED as to Plaintiff's claims against McInness.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1331 (federal question) and 1343(a) (civil rights).  The parties contest neither personal jurisdiction nor venue, and the Court finds a sufficient factual basis for each.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all documents submitted in support of and in opposition to the motion. Viewed in the light most favorable to Plaintiff, the submissions

Case 2:06-cv-00278-MEF-CSC    Document 53    Filed 05/21/2007    Page 4 of 32

of the parties establish the following relevant facts:

Plaintiff is a black female who began working at ALDOT in Montgomery, Alabama in 1994. In July of that year, she was provisionally appointed as an Engineering Assistant (hereinafter "EA") I. She was given permanent status in March of 1999.

In November 2001, Plaintiff complained that her supervisor at the time, James Horace (hereinafter "Horace"), was sexually harassing her. Waits was Horace's supervisor. Plaintiff filed an Equal Employment Opportunity Commission (hereinafter "EEOC") Charge of Discrimination on August 28, 2002 and a departmental grievance in 2003 alleging harassment by Horace. ALDOT investigated Plaintiff's allegations against Horace. As a result of the investigation, ALDOT terminated Horace's employment in April 2003.

In January 2005, Plaintiff was an EA II/III, and Jackson was her immediate supervisor. Jackson also supervised Karen Stacey (hereinafter "Stacey"), a white female EA II/III who worked in the same office as Plaintiff. Jackson's supervisor was Waits, who also indirectly supervised Plaintiff. Joe McInness (hereinafter "McInness") was the director of ALDOT.

On January 31, 2005, Plaintiff and Stacey were involved in an accident while traveling in Stacey's car. Plaintiff believed that Stacey hit the other vehicle, while Stacey believed that the other vehicle had hit her. Stacey said to Plaintiff, "Did you see that stupid motherfucking nigger hit me?" Plaintiff confronted Stacey about the slur at the scene, and Stacey denied using it.

Jackson had Plaintiff's coworker Melvin Wynn (hereinafter "Wynn") take Plaintiff

to the hospital.  Stacey arrived at the hospital separately.  While Plaintiff was in the examining room, Stacey walked in and began talking about the accident.  Plaintiff told Stacey to tell the truth and stated that Stacey had hit the other car.  Stacey abruptly left the room.  Plaintiff claims that when Jackson arrived at the hospital, she tried to tell him about Stacey's statement, but Jackson did not want to hear about it and would not let Plaintiff continue to tell him.  Plaintiff did not file a grievance regarding the incident because she did not think that Waits would do anything about it.

At some point after she returned to work following the accident, Plaintiff went to Jackson's office.  After they finished other business, Jackson told Plaintiff that Waits was "gunning for [her]" and that "when he is gunning for someone, he gets his man."

In April 2005, James Feagin (hereinafter "Feagin"), also an EA, told Stacey that Plaintiff had been telling coworkers that Stacey had used a racial epithet following the car accident.  On April 6, 2005, Stacey told Jackson what Plaintiff had been saying about her.[2]

On April 11, 2005, Stacey confronted Plaintiff at a job site.[3]  Plaintiff's daughter had called her on her cell phone, and she was away from her coworkers.  Stacey came up to her while she was talking to her daughter and said, "You need to stop going around here telling

---

[2] According to Jackson, he talked to Plaintiff regarding this incident at some point before the April 11, 2005 altercation between Stacey and Plaintiff.  He asked Plaintiff if Stacey had used the epithet, and Plaintiff responded that she had.  Jackson claims that he told Plaintiff not to talk to any of the other employees about the incident until he had a chance to speak about it with Jackson.  Plaintiff denies that Jackson told her not to speak about the incident with her coworkers.

[3] Though some witnesses supported Plaintiff's version, others stated that Plaintiff confronted Stacey.  Stacey testified that Jesse Taylor (hereinafter "Taylor") said that if Plaintiff had something to say to Stacey she should say it, and that thereafter Plaintiff approached Stacey.

these lies on me." (Doc. # 27 Ex. A at 13.)  Plaintiff asked Stacey what she said and Stacey repeated the statement.  Plaintiff told her daughter that she would call her back.  By then, the other coworkers had gathered around Plaintiff and Stacey.[4]

When Jackson arrived at the work site, he and Stacey had a private conversation about what had just occurred.  Plaintiff attempted to tell him her account of the incident, but Jackson would not listen to her.  Waits learned about this incident on or about April 8, 2005.

Jackson reprimanded Plaintiff for this incident.  The reprimand, dated April 13, 2005, stated that Plaintiff violated work rules prohibiting "[i]nattention to job–doing anything distracting on the job" and "[d]isruptive conduct of any sort."  (Doc. # 27 Ex. Q.)  The reprimand stated that on April 8, 2005 he told Plaintiff that it would take him time to look into what Stacey had allegedly done and asked Plaintiff to give him a chance to investigate. It also stated, "I told you that I had not discussed this with anyone at the office other than Ms. Stacey." (*Id.*)  The reprimand stated that Plaintiff's actions brought work to a complete halt and that the other employees were unable to complete their work.  Further, it stated that Jackson had to go to the work site to deal with the incident.  Jackson also wrote that he considered her actions a serious violation of work rules, and that similar actions in the future would cause him to request an immediate suspension pending Plaintiff's dismissal from ALDOT.  Plaintiff denies that Jackson ever told her not to discuss Stacey's comment.

---

[4] According to Wynn's affidavit, Stacey told Plaintiff that if she had something to say to her, she should say it.  Stacey also told Plaintiff that she "didn't say that word."  (Doc. # 29 Ex. 3 at 2.) Plaintiff responded that Stacey knew what she said and that Plaintiff and God knew what she said. Plaintiff also said that she would not lie about it.  At that point, Stacey started yelling at Plaintiff, and Plaintiff responded to her.

On April 14, 2005, Plaintiff received a performance appraisal. Her score was a 17.5 for responsibility, which met standards, and a 10.5 for performance, which partially met standards. According to Jackson, her score had been reduced based on the April 12, 2005 reprimand.

On April 15, 2005, Plaintiff submitted a Complaint Form to the Department of Transportation. (Doc. # 29 Ex. 2 at 8-10.) Therein, she alleged an unfair appraisal grade, defamation of character, and retaliation. Plaintiff challenged the 10.5 score on the appraisal and the reprimand. Waits found that her score was proper and that her actions justified the reprimand. In his findings, Waits noted that Plaintiff's coworkers said that she often brought up the Stacey incident. He found that Plaintiff approached the other EAs on the morning of April 11 and began talking about the Stacey incident. He also stated that Plaintiff admitted that she had approached Stacey and the other EAs. Waits noted that Jackson told him that when he arrived back at the job site, only Plaintiff, Wynn, and Reeser Knight (hereinafter "Knight") were not performing their assigned jobs.[5] He found that Plaintiff was properly given a responsibility score of 17.5 partly because she did not possess a certain certification that was needed for some of her job responsibilities.

An Investigative Determination by ALDOT, dated June 1, 2005, determined that the reprimand and the appraisal scores were proper. (Doc. # 27 Ex. U.) Plaintiff challenged

---

[5] During his investigation, Waits interviewed Wynn regarding the incident at the job site. When asked by Waits whether he had ever heard Stacey make a racial slur, Wynn responded that he had not, but that she often referred to black people as "them" and "they." He also told Waits that Plaintiff only talked with him once about Stacey's alleged slur. Wynn told Waits that Jesse Taylor (hereinafter "Taylor"), one of Stacey and Plaintiff's coworkers, and Stacey instigated the incident.

the decision but failed to appear at the grievance hearing on August 12, 2005. Her grievance was therefore dismissed.

In late April of 2005, Plaintiff filed an EEOC Charge of Discrimination claiming discrimination and retaliation.[6] (Doc. # 29 Ex. 2.) Therein, she alleged that ever since her February 2003 Charge of Discrimination, she had been subjected to discrimination, harassment, and retaliation. She further claimed that she was subjected to a hostile work environment.

In this lawsuit, Plaintiff claims that beginning in the spring of 2005 she was treated differently from Stacey. Plaintiff was given manual labor jobs, while Stacey was not.[7] For example, Plaintiff had to make concrete cylinders. Plaintiff also was written up for violating the call-in policy, while Stacey was regularly allowed to violate it without being written up.[8] Stacey would tell Jackson that other employees did not work the hours they recorded, and Jackson reduced the hours on the employees' time sheets. Plaintiff assumes that Stacey did the same with Plaintiff's hours. However, Plaintiff has no personal knowledge that she did. Plaintiff and Stacey had been allowed to arrive at work at 7:30 a.m. so that they could drop off their children. However, following the incident on April 11, 2005, Plaintiff had to arrive at work at 7:00 while Stacey was still allowed to arrive at 7:30.

In June 2005, Jackson told Plaintiff that he had instructed her to retrieve some

---

[6] The EEOC Charge of Discrimination is not filled out or dated, however, the Plaintiff's affidavit in support of this Charge is dated April 27, 2005.

[7] Stacey testified that she also performed manual labor, including making concrete cylinders.

[8] However, Waits gave Stacey at least one letter of written counsel.

paperwork from his mailbox and that she did not follow his instructions. Plaintiff told Jackson that he had not told her that. Jackson yelled at her and told her to shut up. Jackson also cursed at Plaintiff. Jackson gave Plaintiff a written reprimand, dated June 14, 2005, for this incident. (Doc. # 29 Ex. 5.) He stated in the reprimand that he had told her to go to the District Office to pick up some paperwork that she had not filled out properly. The reprimand stated that Jackson told Plaintiff to ask another employee to retrieve the EDP paperwork from Jackson's mailbox and to give it to Plaintiff. The reprimand stated that the other employee told him that Plaintiff asked for "any paperwork" that she had for Plaintiff; however, it stated that Plaintiff never asked for the EDP paperwork. In the reprimand, Jackson stated that he considered this insubordination because she did not follow his specific instructions.

On June 27, 2005, Plaintiff filed an EEOC Charge of Discrimination, which included the June 14, 2005 reprimand as well as other allegations of retaliation and harassment.[9] (Doc. # 29 Ex. 6.)

In August 2005, Jackson held a meeting at which he passed out a memo from Waits regarding approved and disapproved leave. The memo, dated August 24, 2005, stated that the office would be checking the employees' leave going back to April 8, 2005. Some of Plaintiff's leave was taken away as a result of this process.

On August 30, 2005, Jackson sent Plaintiff a letter of written counsel which stated

---

[9] The EEOC Charge of Discrimination was not fully filled out, but it appears that it was notarized and given a charge number.

that it was intended to document Jackson's concerns about Plaintiff's excessive absences. (Doc. # 29 Ex. 9.) On the same date, Plaintiff received a letter of written counsel regarding her failure to follow the office's call-in procedures. The letter stated that any similar instances in the future would result in a reprimand.

Plaintiff applied for Civil Engineer (hereinafter "CE") positions in October 2004 and again in November 2005. Plaintiff was on the CE register, which is required to be considered for a promotion to CE. This position was not offered to Plaintiff. The CE position was offered to Stacey, who was also on the employment register; however, Stacey declined it.

On November 2, 2005, Plaintiff applied for disability retirement. On November 8, 2005, the Medical Board of the Retirement Systems of Alabama approved her application with the effective date of her retirement to be January 1, 2006.

On December 28, 2005, the EEOC mailed Plaintiff Dismissals and Notices of Suit Rights for her April and June 2005 Charges of Discrimination.

On March 28, 2006, Plaintiff filed suit against ALDOT, Waits, Jackson, and McInness. She amended her Complaint on June 19, 2006. Her first Amended Complaint contains two counts. Count One is a claim against Waits, Jackson, and McInness[10] pursuant to § 1981, via § 1983, for alleged violations of constitutional and statutory rights. Plaintiff sues Waits and Jackson in their individual capacity for money damages and in their official

---

[10] Plaintiff subsequently abandoned her claim against McInness. As noted above, Defendants are therefore entitled to summary judgment on that claim.

capacities for prospective injunctive relief.  Count Two is a claim of race discrimination

brought pursuant to Title VII against ALDOT only.

## DISCUSSION

### I.  Motion to Strike

Defendants argue that certain statements in the affidavits and depositions submitted

by Plaintiff should be stricken.  They challenge statements in Wynn's affidavit referring to

a slur allegedly made by Stacey, referring to Defendants "treating [Plaintiff] 'differently,'"

and referring to the fact that "there was no way that Stacey could have known that."  (Doc.

# 33 at 2.)  They also move to strike portions of Wynn's affidavit comparing Defendants'

treatment of Plaintiff and Stacey.  They further move to strike Plaintiff's August 28, 2002

EEOC Charge of Discrimination.

Given that the testimony Defendants have challenged is submitted in opposition to a

motion for summary judgment, it must comply with the requirements of Rule 56(e) of the

Federal Rules of Civil Procedure. Rule 56(e) makes it plain that affidavits submitted in

support of or opposition to a motion for summary judgment

> shall be made *on personal knowledge,* shall set forth such facts
> as would be *admissible in evidence,* and shall *affirmatively show
> that the affiant is competent to testify to the matters stated
> therein.*

Fed. R. Civ. P. 56(e) (emphasis added). It is clear that the Federal Rules of Civil Procedure

also provide for the submission of deposition testimony in support of or in opposition to

motions for summary judgment. Such testimony is also required to be made on personal

knowledge from a witness competent to testify on the matters stated and to set forth facts as would be admissible in evidence. *See, e.g., Rowell v. Bellsouth Corp.,* 433 F.3d 794, 799-800 (11th Cir. 2005) (affirming a decision granting an employer's motion for summary judgment and explaining that deposition testimony from plaintiff could only be considered if it could "be reduced to an admissible form" at trial); *Randle v. LaSalle Telecomms.,* 876 F.2d 563, 570 n.4 (7th Cir. 1989); *Home Oil Co. v. Sam's East, Inc.,* 252 F. Supp. 2d 1302, 1308 (M.D. Ala. 2003) (Thompson, J.).

The requirements of Rule 56 make it plain that affidavits or depositions which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. *See, e.g., Thomas v. Ala. Council on Human Relations, Inc.,* 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003) (Fuller, J.); *Story v. Sunshine Foliage World, Inc.,* 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000). *Accord, Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000). Testimony that fails to meet the standards set forth in Rule 56(e) may be subject to a motion to strike. *See, e.g., Thomas,* 248 F. Supp. 2d at 1112; *Givhan v. Electronic Eng'rs, Inc.,* 4 F. Supp. 2d 1331, 1334 (M.D. Ala.1998) (DeMent, J.). However, the court need not strike the entire affidavit or deposition, rather it *may strike or disregard* the improper portions and consider the remainder of the testimony. *Id.* at 1334 n.2. "A nonmoving party, opposing a motion for summary judgment . . . cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avigran v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

Defendants request that the Court strike portions of Wynn's affidavit that refer to Defendants "treating [Plaintiff] 'differently'" and reference to the fact that "'there was no way that Stacey could have known that.'"  (Doc. 33 at 2.)  They contend that such a statement "is conclusory, addresses an uncommunicated mental operation and is merely an assertion of the employee's opinion."  (*Id.*)  The Court concludes that Wynn's testimony regarding Defendants treating Plaintiff "differently" is proper because it is supported by specific examples.  The Court will strike Wynn's statement that "there was no way that Stacey could have known that" as it is not based on Plaintiff's personal knowledge.

Defendants also move to strike "the portions of Wynn's testimony comparing the treatment of Stacey and [Plaintiff]."  (*Id.*)  However, the Court finds that the statements in the affidavit comparing Stacey and Plaintiff are sufficiently specific and based on facts about which Plaintiff has personal knowledge.  Therefore, the Court will not strike them.

Defendants next move to strike the portion of Wynn's affidavit stating that Plaintiff was qualified for the CE position.  Defendants argue that this statement is conclusory and speculative.  The Court agrees.  There is no evidence that Wynn was involved in the CE promotion decisions or that he even knew what the necessary qualifications were.  *See Grady v. BellSouth*, 160 F. App'x 863, 864-65 (11th Cir. December 22, 2005) (unpublished per curiam opinion) (upholding a grant of a motion to strike a coworker's testimony that the plaintiff was qualified where the coworker was not involved in the promotion decision and did not know what criteria were used).  Accordingly, his statement that Plaintiff was qualified for the CE position will be stricken.

Defendants assert that Plaintiff's August 28, 2002 EEOC Charge of Discrimination should be stricken because claims based on the allegations therein are time-barred and because the allegations are conclusory and do not pertain to any claims at issue here. The Court agrees with Defendants that the any claims regarding the allegations in the August 28, 2002 Charge of Discrimination are time-barred. However, Plaintiff argues that this claim is relevant because Waits was one of her supervisors at the time she filed the Charge of Discrimination and during the incidents giving rise to this case. Plaintiff does not seek to recover for the conduct alleged in the Charge of Discrimination. The Court will consider the prior Charge of Discrimination should the claims therein be relevant to the Court's consideration of Plaintiff's claims in this case. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002) ("[A time-barred claim] may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.").

Finally, Defendants argue that the portions of Wynn's affidavit referring to an alleged slur made by Stacey should be stricken. Defendants argue that because there is no genuine issue of material fact as to Plaintiff's retaliation claim, this testimony is immaterial. The Court will not decide this aspect of the motion at this time because Plaintiff's relevance argument depends on a finding by the Court that Defendants are entitled to summary judgment on Plaintiff's retaliation claim. If the Court is convinced, during its analysis of the Motion for Summary Judgment, that this evidence is immaterial, then the Court will not consider it. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

14

judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). However, the Court will not predicate its ruling on a determination of the merits of Plaintiff's retaliation claim. Defendants' motion is due to be DENIED as to the portions of Wynn's affidavit referring to Stacey's alleged slur.

## II. Motion for Summary Judgment

### A. Claims Against ALDOT Pursuant to § 1983

ALDOT argues that Plaintiff's § 1983 claims against it are barred by the Eleventh Amendment. However, Plaintiff brings no claims against ALDOT pursuant to § 1983. To the extent that Plaintiff sues Waits and Jackson in their official capacities she only seeks prospective injunctive relief, and therefore the Eleventh Amendment presents no bar to these claims. For these reasons, the Court need not address Defendants' arguments regarding Eleventh Amendment immunity.

### B. Section 1983 Retaliation Claims Against Waits and Jackson

Plaintiff asserts claims against Waits and Jackson pursuant to § 1981, via § 1983, for retaliation. Waits and Jackson contend that qualified immunity shields them from these claims, and thus that these claims should be dismissed.[11]

The qualified immunity doctrine insulates government agents from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The test for good faith turns on the objective

---

[11] Defendants argue that Plaintiff's retaliation claim against Waits and Jackson is barred by qualified immunity. They do not appear to contend that her other claims against Waits and Jackson are barred by qualified immunity.

reasonableness of the official's conduct in light of established law: "government officials .

. . generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Id*. at 818.  The Eleventh Circuit applies this standard using a two-step

analysis.  First, the court must determine whether the official was acting within his or her

discretionary authority when the allegedly wrongful act occurred.[12]  *Akins v. Fulton County*,

420 F.3d 1293, 1299-1300 (11th Cir. 2005).  If the official proves that he was acting within

his discretionary authority, the court must then determine whether the plaintiff has

established that the official's conduct, at the time it occurred, violated a clearly established

statutory or constitutional right of which a reasonable person would have known.  *Priester*

*v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000).  Clearly established law

consists of either controlling authority in the jurisdiction at the time of the incident or a

consensus of cases of persuasive authority.  *See Wilson v. Layne*, 526  U.S. 603, 617 (1999).

The United States Supreme Court has set forth a two-part test for courts to apply when

determining whether Plaintiff has met her burden of proving that a defendant's actions

violated clearly established statutory or constitutional law.  The court must first ask the

following threshold inquiry: "Taken in the light most favorable to the party asserting the

injury, do the facts alleged show the officer's conduct violated a constitutional [or statutory]

right?"  *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004) (quoting  *Saucier v. Katz,* 533 U.S.

_____

[12] The parties do not dispute that Waits and Jackson were acting within their discretionary
authority.

194, 201 (2001)).  The court must address this issue before proceeding to the second part of

the test.  *See Saucier*, 533 U.S. at 201.  "If no constitutional [or statutory] right would have

been violated were the allegations established, there is no necessity for further inquiries

concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a

favorable view of the parties' submissions, the next, sequential step is to ask whether the

right was clearly established."  *Id.*

Because there appears to be no dispute that Waits and Jackson were acting within

their discretionary authority, the Court proceeds directly to the question of whether Waits

and Jackson violated clearly established statutory or constitutional law.  The Court concludes

that Waits and Jackson are entitled to qualified immunity because they did not.

First, Plaintiff's argument that her retaliation claim is brought under the procedural

component of the Due Process Clause is unavailing.  The procedural component of the Due

Process Clause guarantees notice and a fair hearing.  *See, e.g., McKinney v. Pate*, 20 F.3d

1550, 1561 (11th Cir. 1994) ("[T]he Constitution requires that the state provide fair

procedures and an impartial decisionmaker before infringing on a person's interest in life,

liberty, or property.").  Plaintiff has not demonstrated that she has any procedural due

process right to be free from retaliation.  The Court has not found, nor have the parties cited,

any case law establishing a cause of action for retaliation based on the procedural component

of the Due Process Clause.

Second, to the extent that Plaintiff's retaliation claims are in fact brought under the

Equal Protection Clause, Waits and Jackson are entitled to qualified immunity on those

claims because there is no right under the Equal Protection Clause to be free from retaliation. *See Watkins v. Bowden*, 105 F.3d 1344, 1354-55 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause."); *cf. Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995) ("[N]o clearly established right exists under the *equal protection* clause to be free from retaliation.").  In any event, summary judgment is due to be GRANTED on Plaintiff's retaliation claims brought against Waits and Jackson in their individual capacities because they are entitled to qualified immunity from those claims.

C.  Constructive Discharge on Account of Race Against All Defendants

Plaintiff brings claims for constructive discharge against ALDOT under Title VII and against Waits and Jackson under § 1981 via § 1983.  Plaintiff appears to claim that she was forced to seek disability retirement due to Defendants' conduct.  Because Plaintiff sought and received disability retirement, the Court questions whether Plaintiff can establish a constructive discharge under the law of this Circuit.  This disability retirement was based on physical conditions suffered by Plaintiff.  The Court is aware, however, that some courts have at least suggested that a constructive discharge claim could be brought when a plaintiff took  a disability retirement.  *See, e.g.*, *Temores v. Cowen*, 289 F. Supp. 2d 996, 1002 n.3 (N.D. Ill. 2003).  Even assuming arguendo that a plaintiff may claim constructive discharge when she takes a disability-based retirement, the Court finds that the conditions demonstrated by Plaintiff are not sufficient to survive summary judgment.

To prevail on a claim of constructive discharge, plaintiff must show that her working

18

conditions were so intolerable that a reasonable person in her position would have felt compelled to resign. *See Akins*, 420 F.3d at 1302. "[F]or a constructive discharge claim to present a jury issue and thereby survive summary judgment, the plaintiff must produce substantial evidence that conditions were intolerable." *Id.*

The Court finds that the conditions shown by Plaintiff do not rise to the level of those required by the Eleventh Circuit to constitute constructive discharge. *See, e.g.*, *Akins*, 420 F.3d at 1302 (summary judgment inappropriate where plaintiffs' work duties were removed, they were excluded from meetings, their coworkers were instructed not to talk to them, and one of them was accused of illegal conduct); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (grant of summary judgment reversed where plaintiff was "[s]tripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers"). Because Plaintiff has not shown that her working conditions were so intolerable that a reasonable person would have felt compelled to resign, Defendants' motion is due to be GRANTED as to Plaintiff's constructive discharge claim.

D.  Other Disparate Treatment on Account of Race Against All Defendants

Plaintiff brings a variety of disparate treatment claims against ALDOT under Title VII and against Waits and Jackson under § 1981, via § 1983. Specifically, she contends that she suffered disparate treatment when she received reprimands and letters of written counsel, was required to perform manual labor, had to arrive at work at 7:00 instead of 7:30, was disciplined for violating the call-in rule, had previously-approved leave taken away, and was not promoted to CE. Because both Plaintiff's § 1981 and Title VII disparate treatment

19

claims are subject to the same analytical framework, the Court will discuss them together. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

### 1. Statutory and Procedural Framework

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can establish discriminatory intent through direct or circumstantial evidence. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). Where a plaintiff tries to establish discrimination through circumstantial evidence, courts apply the familiar tripartite burden-shifting analysis promulgated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."[13] *Ferrill v. Parker Group*,

---

[13]  Specifically, Section 1981 provides, in relevant part,  that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens. . . .
> . . . .
> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

168 F.3d 468, 472 (11th Cir. 1999).  Unlike a Title VII claim, a § 1981 claim may be brought

against an individual.  *See Shotz v. City of Plantation*, 344 F.3d 1161, 1176 (11th Cir. 2003)

("[Section] 1981 . . . provide[s] for individual liability."); *Busby v. City of Orlando*, 931 F.2d

764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are . . . inappropriate.

The relief granted under Title VII is against the *employer,* not individual employees whose

actions would constitute a violation of the Act.").  Section 1981 claims must be supported

by proof of *intentional* discrimination.  *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458

U.S. 375, 391 (1982); *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991).

Discriminatory intent can be established through either direct or circumstantial evidence.  *See*

*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983).  Where a

plaintiff seeks to prove intentional discrimination through circumstantial evidence of the

employer's intent, the court applies the burden-shifting framework set out in *McDonnell*

*Douglas* and *Burdine*.[14]

As to circumstantial evidence of discrimination, under the *McDonnell Douglas*

analysis, the plaintiff must first establish a prima facie case of discrimination. To state a

prima facie case of racial discrimination based on disparate treatment, a plaintiff must show

that (1) she belongs to a racial minority; (2) she was subjected to an adverse employment

action; (3) the employer treated similarly situated employees outside her classification more

---

[14]  The Court notes that in *McDonnell Douglas*, the Supreme Court articulated the tripartite
framework for analyzing claims brought under Title VII.  However, the allocation of burdens and
elements of a *prima facie* case are the same for employment claims stemming from Title VII and
Section 1981.  *See Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994); *Howard v.
BP Oil Co., Inc.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994).

favorably; and (4) she was qualified to do her job. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam).

Once a plaintiff establishes the requisite elements of the prima facie case, the defendant has the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action. *See, e.g., Holifield*, 115 F.3d at 1564 (citing *Burdine,* 450 U.S. 248). The employer's burden is "exceedingly light." *Id.* (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)). This burden is one of production, not persuasion, and consequently the employer "need only produce evidence that could allow a rational fact finder to conclude that [the employee's] discharge was not made for a discriminatory reason." *Standard*, 161 F.3d at 1331.

If the defendant presents a legitimate, nondiscriminatory reason for the challenged employment action, the burden then returns to the plaintiff to supply "evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1322 (M.D. Ala. 2001) (Thompson, J.) (citing *Chapman*, 229 F.3d at 1024). "Because the plaintiff bears the burden of establishing pretext, [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. Gen. Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988). The plaintiff may seek to demonstrate that

the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 148 (2000).

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield*, 115 F.3d at 1565. As long as an employer's beliefs were honest, they can be mistaken without it implying that the employer acted with discriminatory motive. *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one . . . . [O]ur sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." (quotations omitted)).

A plaintiff's conclusory allegations are simply not sufficient to demonstrate pretext. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("[T]he plaintiff must . . . present concrete evidence in the form of specific facts which show that the

defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice.").

### 2. Application of the Legal Framework to the Facts of this Case

Plaintiff alleges race discrimination based on disparate treatment against all of the Defendants. Plaintiff puts forward as evidence of disparate treatment the discipline she received, the fact that she had to perform manual labor, the requirement that she arrive at work at 7:00, the fact that she was disciplined for violating the call-in rule, and the fact that she had previously-approved leave taken away, and she was not promoted to CE.

Defendants do not argue that Plaintiff was not qualified for the job she held,[15] and there is no dispute that Plaintiff is the member of a protected class. The parties contest whether Plaintiff was subjected to adverse employment actions and whether she was treated less favorably than similarly situated employees outside the protected class.

At the outset, the Court notes that Plaintiff has presented no direct evidence of discriminatory intent. While she presents evidence of a comment which could be viewed as discriminatory, "courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [membership in the protected class], to constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). The Court will therefore look to circumstantial evidence of race discrimination.

---

[15] Defendants do argue, however, that Plaintiff has not shown that she was qualified for a promotion to CE, which is an element of her prima facie case for her denial of promotion claim.

24

a.  Reprimands and Letters of Written Counsel

The Court turns to whether the reprimands and letters of written counsel constitute adverse employment actions in the context of disparate treatment claims.  "[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment."  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  *Id.* at 1239.

The reprimands do not constitute adverse employment actions sufficient to establish a prima facie case of discrimination.  Plaintiff has presented no evidence that the reprimands lead to tangible harm in the form of a loss of pay or benefits, or lost opportunity for a job promotion.  *See id.*  at 1240-41; *Wallace v. Ga. Dep't of Transp.*, No. 06-13345, 2006 WL 3626967, at *2 (11th Cir. Dec. 13, 2006) (unpublished per curiam decision).  The letters of written counsel are clearly also not adverse employment actions, given that they are even less likely to lead to some tangible effect on the terms and conditions of employment, and Plaintiff has not presented evidence of such an effect here.  *See Davis*, 245 F.3d at 1241-42. Accordingly, Defendants' Motion is due to be GRANTED as to Plaintiff's disparate treatment claims for the letters of written counsel and reprimands.

b.  Plaintiff's Other Claims

Plaintiff also claims that she had to perform manual labor, was required to arrive at work at 7:00, was disciplined for violating the call-in rule, had previously-approved leave later taken away, and was denied promotion to CE. With respect to these claims, the Court finds that genuine issues of material fact preclude summary judgment. As such, Defendants' Motion is due to be DENIED as to these claims.

E. Title VII Retaliation Against ALDOT

Plaintiff also appears to bring a claim of retaliation against ALDOT under Title VII. Plaintiff alleges that she was retaliated against for her previous charges of discrimination for sexual harassment against Horace, her reporting of Stacey's alleged slur, and the EEOC Charges of Discrimination that she filed in April and June of 2005. Plaintiff alleges multiple acts of retaliation: two written reprimands, letters of written counsel, a low annual performance appraisal, having previously approved leave taken away, having to report to work at 7:00, having her time sheets scrutinized and her hours changed, and not being promoted to CE. The Court begins its analysis with Plaintiff's claims that do not survive summary judgment.

1. *Plaintiff's Retaliation Claims on which ALDOT is Entitled to Summary Judgment*

"[A] plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Little v. United Techs., Carrier Transicold*

26

*Div.*, 103 F.3d 956, 959 (11th Cir. 1997). A plaintiff may make use of the *McDonnell-Douglas* burden-shifting framework in the absence of direct evidence of discrimination. *See Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 511 n.10 (11th Cir. 2000).

### a. Statutorily Protected Activity

The Court turns first to the requirement that Plaintiff engaged in statutorily protected activity. There is no dispute that Plaintiff's EEOC charges were protected activity. However, the parties dispute whether Plaintiff's reporting the slur to Jackson was statutorily protected activity under Title VII. Protected activity includes EEOC charges as well as complaints to superiors about sexual harassment. *Johnson*, 234 F.3d at 507. However, it does not include the "expression of opposition to a single comment by one co-worker to another." *Little*, 103 F.3d at 959. "The opposition [to racial discrimination] must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Id.* (quoting *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978)).

A plaintiff may establish that he was engaged in protected activity, however, where he "shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* at 960. In *Little v. United Technologies, Carrier Transicold Division*, the Eleventh Circuit considered the case of an employee who alleged that a coworker had made a single racial slur. The Court held that the comment did not constitute an unlawful employment practice of the defendant. *Id.* at 959. However, the Court went on to consider whether the plaintiff had a good faith, reasonable belief that the

defendant was engaged in unlawful employment practices. *Id.* at 960. The Court found that it did not, noting that he did not report the comment to a supervisor or management-level employee, instead bringing it up for the first time in a team meeting eight months after the incident. *Id.*

In the circumstances of this case, the Court concludes that Plaintiff had a good faith, reasonable belief that ALDOT was engaged in an unlawful employment practice. Unlike the plaintiff in *Little*, here Plaintiff tried to complain to Jackson a few hours after Stacey allegedly made the slur, but Jackson would not listen to her. Therefore, she was engaged in statutorily protected activity when she complained about Stacey's alleged slur to Jackson. Summary judgment is thus not appropriate with respect to Plaintiff's claims for retaliation based on reporting Stacey's comment to Jackson.

b. Causation

The Court next addresses the causation requirement. "To prove a causal connection, we require a plaintiff only to demonstrate that the protected activity and the adverse action were not wholly unrelated." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). "[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Id.* "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch.*

*Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

The Court turns first to Plaintiff's retaliation claims regarding her complaints about Horace's sexual harassment. Plaintiff has established that Jackson was aware that Plaintiff had complained about Horace. However, the temporal proximity is not sufficiently close to constitute circumstantial evidence of a causal connection between Plaintiff's complaints about Horace and any adverse employment action taken against her. Plaintiff filed her EEOC charge regarding Horace in 2002. The first act of retaliation Plaintiff complains of is the reprimand she received on April 13, 2005. This gap is too great for Plaintiff to rely on temporal proximity. *See Breeden,* 532 U.S. at 273 (citing with approval circuit court cases invalidating temporal proximities of three and four months). The Court therefore concludes that Plaintiff has failed to satisfied the causation requirement with respect to her claims of retaliation for her sexual harassment complaints, and ALDOT is entitled to summary judgment on those claims.

The Court next addresses Plaintiff's claims of retaliation stemming from her reporting Stacey's alleged slur to Jackson. Plaintiff attempted to tell Jackson about the slur at the hospital on the same day the incident occurred. Jackson, however, would not listen to her or let her continue. There is no dispute that Waits and Jackson knew of Plaintiff's allegation by early April of 2005; Waits found out about Plaintiff's allegation regarding Stacey on or about April 8, 2005 from Jackson. Because Jackson would not listen to Plaintiff at the hospital, and because it is uncertain how much she was able to tell him, the Court will calculate the temporal proximity of Plaintiff's alleged acts of retaliation from early April of

2005.  Doing so, the Court concludes that a reasonable jury could find that all of the acts Plaintiff identifies as taken in retaliation for her reporting of Stacey's alleged slur, except for her claim of denial of promotion, satisfy the causation requirement.

Turning to Plaintiff's claim based on denial of promotion in retaliation for her complaints about Stacey's alleged slur, the Court concludes that the temporal proximity requirement is not met.[16]  Plaintiff alleges that she applied for the position she sought in November 2005, which is at least seven months after early April of 2005.  This is well outside the three to four month temporal proximity approved by the Supreme Court.  *See Breeden,* 532 U.S. at 273 (citing with approval circuit court cases invalidating temporal proximities of three and four months).  Therefore, ALDOT's Motion is due to be GRANTED as to this claim because Plaintiff cannot establish a prima facie case.

With respect to Plaintiff's allegations of retaliation based on her April and June 2005 EEOC activity, Plaintiff has not provided evidence demonstrating when ALDOT received notice of her EEOC charges.  *See Farley*, 197 F.3d at 1337 (to prove causation through temporal proximity, a plaintiff must "provide[] sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action").  Because she has failed to satisfy her burden, ALDOT's Motion is due to be GRANTED as to these claims.

As explained above, ALDOT's Motion is due to be GRANTED as to Plaintiff's

---

[16] Plaintiff makes no attempt to establish the causation element of her prima facie case by any method other than showing temporal proximity.

claims based on her August 2002, April 2005, and June 2005 EEOC charges. It is also due to be GRANTED as to her claims that she was denied a promotion to CE in retaliation for reporting of Stacey's alleged slur.

### 2. Plaintiff's Claims on which Defendants Are Not Entitled to Summary Judgment

Plaintiff also alleges the following acts as retaliation for reporting Stacey's alleged slur to Jackson: reprimands, letters of written counsel, a low annual performance appraisal, having previously approved leave taken away, having to report to work at 7:00, and having her time sheets scrutinized and her hours changed. Having applied the *McDonnell-Douglas* tripartite analysis to each of these claims, the Court finds that genuine issues of material fact exist and that ALDOT has failed to show that it is entitled to judgment as a matter of law. Consequently, ALDOT's Motion with respect to these claims is due to be DENIED.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1. Defendants' Motion to Strike (Doc. # 35) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Wynn's statements in his affidavit that "there was no way that Stacey could have known that" and that Plaintiff was qualified for the CE position. It is DENIED in all other respects.

2. Defendants' Motion for Summary Judgment (Doc. # 25) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Plaintiff's claims against Joe McInness; her retaliation claims brought under § 1983 against Waits and Jackson in their individual

capacities; her disparate treatment claims based on constructive discharge; her disparate treatment claims based on the reprimands and letters of written counsel; her Title VII retaliation claims against ALDOT alleging retaliation for her April and June 2005 EEOC charges and her complaints regarding sexual harassment by Horace; and her Title VII retaliation claims against ALDOT alleging that she was denied a promotion to CE in retaliation for reporting Stacey's alleged slur.  Those claims are hereby DISMISSED with prejudice.  The Motion is DENIED in all other respects.

DONE this the 21st day of May, 2007.



_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE