## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| ALVERENE BUTLER, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | )   **CASE NO. 2:06-cv-00278-MEF-CSC** |
| ALABAMA DEPARTMENT OF | ) |
| TRANSPORTATION, et al., | ) |
| | ) |
|     Defendants. | ) |

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL AND RULE 50 MOTION

### I. Introduction

On March 28, 2006, Plaintiff, appearing *pro sé*, filed this lawsuit against the Alabama Department of Transportation, its Director Joe McInnes, Mark Waits and Todd Jackson.

After retaining counsel, Plaintiff, on June 19, 2006, filed her First Amended Complaint. Plaintiff s Amended Complaint contained two counts. Count One set forth claims against McInnes, Waits, and Todd.[1] In Count One, Plaintiff alleged that Waits and Jackson retaliated and discriminated against her in violation of 42 U.S.C. §1981 ("§1981") via 42 U.S.C. §1983 ("§1983").(Doc. 53 at 1). Plaintiff also asserted, in Count One, that she was constructively discharged from her position with ALDOT.

Plaintiff asserted that she was subjected to disparate treatment[2] based upon her race and that Defendants had retaliated against her for: 1) filing an EEOC charge in 2002 claiming that she was being harassed by her supervisor James Horace, 2) filing a department grievance in 2003

---

[1] Plaintiff subsequently abandoned her complaint against Joe McInnes. The Court then granted summary judgment in favor of McInnes. (Memorandum Opinion and Order, Doc. 53 at 10).

[2] Plaintiff's Count One disparate treatment claims were asserted pursuant to 42 USC §1981, via §1983. §1981 prohibits discrimination in the making and enforcing of public and private contracts, including employment contracts. Allocation of burdens and elements of a *prima facie* case are the same for employment cases filed under §1981 and under Title VII.

alleging harassment by Horace, 3) reporting an alleged racial slur by co-worker Karen Stacey[3],
4) filing a departmental grievance on April 15, 2005 and filing an EEOC charge in April 2005,
and 5) filing an EEOC charge in June 2005.

In Count One, Waits and Jackson were sued in their individual capacities as well as
their official capacities.

Count Two of the First Amended Complaint set forth claims of racial discrimination,
pursuant to Title VII, against the Alabama Department of Transportation (ALDOT).  Also set
forth in Count Two was a claim that Plaintiff had been retaliated against for the activities
described above.  The only Defendant in Count Two was ALDOT.

Defendants filed a Motion for Summary Judgment and a Motion to Strike.  The Motion to
Strike addressed certain statements made in affidavits submitted by Plaintiff and an EEOC
Charge filed in August 2002 concerning Plaintiff's claim of sexual harassment against James
Horace.

On May 21, 2007, the Court entered its Memorandum Opinion and Order (Doc. 53) in
response to the motions filed by Defendants.  In its Order, the Court granted portions of
Defendants' Motion for Summary Judgment, substantially reducing the issues before the
Court.  The Court denied Defendants' Motion to Strike the EEOC charge filed concerning
sexual harassment by James Horace.  The Court's rationale in leaving the sexual harassment
charges in the case was based upon *Nat'l R. R. Passenger Corp. v. Morgan,* 536 U.S. 101
(2002).

In granting portions of Defendants' Motion for Summary Judgment, the Court granted
Jackson and Waits qualified immunity with regard to the Count One claim of retaliation.

---

[3] The alleged slur was directed against a non-employee of the Department who was involved in a traffic accident
with Stacey in January 2005.  Stacey denied uttering the slur.

Additionally, the Court granted summary judgment with regard to Plaintiff's claim of constructive discharge.  (Doc. 53 at 17-19).

The Court then turned its attention to the disparate treatment claims, considering those filed pursuant to §1981, via §1983, as well as those set forth under Title VII.  After discussing the various claims, the Court reduced those disparate treatment claims actionable in this lawsuit to[4]:

1.      Performance of manual labor
2.      Plaintiff was required to arrive at work at 7:00 and her comparator did not have to report until 7:30.
3.      Was disciplined for violating the call-in rule.
4.      Had previously approved leave taken away.
5.      Was denied promotion to Civil Engineer

The Court then addressed Butler's retaliation claims, both in Count One (pursuant to Section 1981 through 1983) and in Count Two (pursuant to Title VII).

For a variety of reasons involving various elements of the retaliation *prima facie* case[5], the Court reduced Butler's Title VII retaliation claims to her claim of retaliation for allegedly reporting Stacey's purported racial slur of January 31, 2005.  The alleged acts of retaliation for reporting the slur are: 1) reprimands, 2) letters of written counsel, 3) low annual performance appraisal, 4) having approved leave taken away, 5) having to report to work at 7:00, and 6) having time sheets scrutinized and hours changed.[6]

---

[4] In Doc. 53 at 25-26, the Court ruled that certain claims were not "adverse employment actions."  Courts have made clear that standard defining an "adverse employment action" in the context of retaliation claims does not apply to a core Title VII discrimination claim.  *Burlington Northern & Santa Fe Ry. Co. v. White*, U.S., 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
[5] Doc. 53 at 26-31.
[6] Doc. 53 at 30-31.

As noted above, the remaining disparate treatment claims are asserted against Waits, Jackson, and ALDOT[7].  The sole remaining retaliation claim lies against only ALDOT.

Prior to trial, Defendants filed a *Motion in Limine* regarding Plaintiff's 2003 claim of sexual harassment against James Horace.  As grounds for their motion, Defendants asserted that the claims against Horace were time barred and that evidence regarding the 2003 sexual harassment claim was irrelevant to the 2005 claims of racial discrimination.  Defendants' motion was overruled.  The Court cited *R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) in ruling that the Horace matter would remain, not for purposes of liability, but for background.

## II. Post Trial Motions

Defendants have filed alternative motions for judgment as a matter of law and for new trial.  This brief is submitted in support of both motions.  Where alternative motions are presented, the Court should rule first on the motion for judgment, and whatever the ruling thereon, the Court should also rule on the motion for a new trial, indicating grounds for the decision.  *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc*., 546 U.S. 394, 126 S.Ct. 980, 163 L.Ed. 2d 974 (2006); *Johnson v. Clark,* 484 F.Supp. 2d 1242 (M.D. Fla. 2007); Steve A. Childress, *Revolving Trapdoors: Preserving Sufficiency Review Of The Civil Jury After Unitherm And Amended Rule 50*, 26 Rev.Litig. 239 (Spring 2007).

A.      Standard of Review for Rule 50(b) FRCP

The purpose of Rule 50(b) of the Federal Rules of Civil Procedure is to guide the procedural requirement for challenging the sufficiency of the evidence in a civil jury trial.  Leslie Eanes, *Federal Rule 50:  Medium Rare Application?; Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc*., 58 Mercer L. Rev. 1069 (Spring 2007).

---

[7] Since analysis of Title VII and §1981 (via §1983) race discrimination claims follow the analytical framework of *McDonnell Douglas,* ,these claims will be addressed together. *Stallworth v. Shuler*, 777 F.2d 1431,1433(11th Cir. 1985)

4

The rule provides that such challenge may occur prior to the submission of the case to the jury and subsequent to the verdict and entry of judgment.  Writing for the *Unitherm* court, Justice Thomas explained that a post verdict motion was necessary because, "…determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart."  *Unitherm*, *supra*, at 985-6.

The standard for granting Rule 50 motions is the same as that for granting summary judgment, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed. 2d 105 (2000).  Drawing an analogy between summary judgment and judgment as a matter of law, Justice O'Connor wrote, "… And the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law…"  She went on to note that, "…the inquiry under each is the same..."  *Reeves*, *supra*, at 2110.  See also David Sloss, *Using Reeves to Teach Summary Judgment*, 47 St. Louis U. L.J. 127 (Winter 2003).

Judgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim.  *Collado v. United Parcel Service,* 419 F.3d 1143 (11th Cir. 2005).

The moving party is entitled to a judgment as a matter of law where the nonmoving party has failed to make a sufficient showing of an essential element of the case with respect to which there is the burden of proof.  *Bogle v. Orange County Board of County Comm'rs.,* 162 F.3d 653 (11th Cir. 1998).  In order to survive a defendant's motion for judgment as a matter of law, the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim.  *Bogle, supra.*

Whether judgment as a matter of law is appropriate in any particular Title VII case will depend on a number of factors. These factors include the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law. *Bernstein v. Sephore, Div. of DFS Group,* 182 F.Supp. 2d 1214 (S.D. Fla. 2002).

Although the Court is to examine the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts. *Walker v. Nations Bank of Florida*, N.A. 53 F.3d 1548 (11th Cir. 1995); *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997).

Eleventh Circuit precedent expressly permits consideration of a Rule 50 motion after denial of a summary judgment. *Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000); *Gross v. Southern Ry., Co.,* 446 F.2d 1057 (5th Cir. 1971). Courts have noted that, "sound practical reasons may justify a judge denying summary judgment even on the identical evidence in support of his granting a directed verdict." *Gleason v. Title Guarantee Co.,* 317 F.2d 56 (5th Cir. 1963); *Walker, supra.* If, when the evidence is in, the district judge finds that the case should be disposed of by a Rule 50 motion and ruling, he is free to do so. *Mendoza v. Borden, Inc.,* 195 F.3d 1248 (11th Cir. 1999).

In a discrimination case based upon circumstantial evidence, the plaintiff, after putting on a *prima facie* case, must produce evidence sufficient to discredit, in the mind of a reasonable juror, all of the defendant's proffered non-discriminatory reasons for its actions. If the plaintiff fails to produce such evidence, the defendant is entitled to judgment as a matter of law. *Combs,* 106 F.3d 1543.

B.      The Standard of Review for Rule 59 FRCP

Pursuant to Rule 59(a) of the *Federal Rules of Civil Procedure*, a new trial may be

granted to all or any of the parties and on all or part of the issues. *Johnson v. Clark*, 484 F.Supp.

2d 1242 (M.D. Fla. 2007).

A new trial may be granted, "for any of the reasons for which new trials have heretofore

been granted in actions at law in the courts of the United States," Rule 59(a).  While a

comprehensive list of the grounds for granting a new trial has been deemed "elusive," the

Supreme Court has held that a motion for a new trial may rest on the fact that the verdict is

against the weight of the evidence that damages are excessive, or that, for other reasons, the trial

was not fair to the party moving.  The motion may raise questions of law arising out of alleged

substantial errors in admissions or rejection of evidence or instructions to the jury. *Johnson v.*

*Clark, supra; Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 253, 61 S. Ct. 189, 85 L.Ed.2

147 (1940).

The standard for granting a motion for new trial is less rigorous for the moving party than

the standard for judgment as a matter of law.  When considering whether to grant a new trial, the

Court must determine whether the verdict is against the clear weight of the evidence or will

result in a miscarriage of justice, even though there may be substantial evidence or will result in

a miscarriage of justice, even though there may be substantial evidence which would prevent the

direction of the verdict. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183,

1186 *(*11th Cir. 2001).

### III. Plaintiff's Disparate Treatment Claims

A.      The Remaining Disparate Treatment Claims

Plaintiff contends that she had been treated differently than Karen Stacey, a white female. The Court, in its *Memorandum Opinion and Order*, reduced the incidents of purported disparate treatment to:

1.   Plaintiff had to perform acts of manual labor and Karen Stacey did not
2.   Plaintiff was required to arrive at work at 7:00 and Karen Stacey did not have to report until 7:30.
3.   Plaintiff was disciplined for violating the call-in rule and Karen Stacey was allowed to violate the call-in rule.
4.   Plaintiff had previously approved leave taken away.
5.   Plaintiff was denied promotion to Civil Engineer and Karen Stacey was offered a position as Civil Engineer.

B.    The *Prima Facie* Case, the Legitimate Nondiscriminatory Reason, and the Proof of Pretext

Initially, a plaintiff has the burden of establishing a *prima facie* case of discrimination. To state a *prima facie* case of racial discrimination based on disparate treatment, a plaintiff must show that (1) she belongs to a racial minority (2) she was subjected to an adverse employment action (3) the employer treated similarly situated employees outside her classification more favorably, and 4) she was qualified to do her job. *Knight v. Baptist Hospital of Miami, Inc.* 330 F.3d 1313, 1316 (11th Cir. 2003).

The plaintiff's *prima facie* case gives rise to a presumption of discrimination. If the defendant has a burden of producing a legitimate nondiscriminatory reason for the challenged action, the defendant satisfies its intermediate burden of production if it produces admissible evidence which would allow the trier of fact to conclude that the employment decision had not been motivated by discriminatory animus. *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir. 1994); *Hawthorne v. Sears Termite & Pest Control*, 309 F.Supp. 2d 1318 (M.D. Ala. 2003); *Walker v. Mortham,* 158 F.3d 1177 (11th Cir. 1998). The defendant can meet this burden

of production by articulating a legitimate, nondiscriminatory reason for the employment decision. *Farley v. Nationwide Mut.Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999).

Once the defendant succeeds in carrying its burden, the *McDonnell Douglas* framework, along with its presumption of discrimination, drops out of the case, and the trier of fact proceeds to the ultimate issue of whether the plaintiff has proved that the defendant intentionally discriminated. *Brackett v. Alabama Department of Transportation*, 212 Fed. Appx. 779 (11th Cir. 2006); *Turnes*, 35 F.3d at 1061.

The fact that the *McDonnell Douglas* framework drops out of the case does not prevent an inquiry into the existence of any element to the claim. The authority and duty of a court to decide whether all elements of a claim have been proven does not end with the denial of a Rule 50(a) motion. If there is insufficient evidence for a jury reasonably to have found one of the elements of a claim to have been proven, the court has a duty to grant a proper Rule 50(b) motion. *Collado v. United Parcel Service*, 419 F.3d 1143 (11th Cir. 2005).

The burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Trotter v. Board of Trustees of the University of Alabama*, 91 F.3d 1449, 1455 (11th Cir. 1996). The Court is not in the business of deciding whether employment decisions are prudent, fair, or correct. The Court's sole concern is whether unlawful discriminatory animus motivated the challenged employment decision. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair.").

In order to prevail under the *McDonnell Douglas* paradigm, the plaintiff must show that the "legitimate, nondiscriminatory reason" proffered by the defendant is pretextual. *Comb*s, 106 F.3d at 1524. Such a showing permits, but does not compel, the trier of fact to conclude that the treatment was motivated by illegal discrimination. *Lathem v. Dept. of Children and Youth Services*, 172 F.3d 786 (11th Cir. 1999). A "reason" is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. *Delong v. Best Buy Company, Inc.,* 211 Fed. Appx. 856 (11th Cir. 2006); *Brooks v. County Com'n. of Jefferson County, Ala.*, 446 F.3d 1160,1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "A reason honestly described, but poorly founded is not a pretext, as that term is used in the law of discrimination." *Delong*, *supra*., (quoting *Pollard v. Rea Magnet Wire Co*., 824 F.2d 557, 559 (7th Cir. 1987).

In order to survive a Rule 50 motion, a plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the plaintiff's claim. *Celotex Corp. v. Catrett,* 477 U.S. 319, 322,23, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265(1986); *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 659 (11th Cir. 1998).

Writing for the Court in *Bogle*, Judge Birch noted, "[t]o survive Orange County's motion, therefore, Bogle had to call a witness or present other competent evidence that could have cast doubt on Orange County's stated reason for his termination…" *Id*. at 659. (Emphasis added) "The plaintiff cannot simply stand on her *prima facie* case; instead she must convince the court that the evidence in the case as a whole preponderates in favor of a finding of intentional discrimination by the defendant." *Walker*, 158 F.3d 1184-85 (11th Cir. 1998). *See also Brackett, supra*.

Pretext may not be established merely by questioning the wisdom of the employer's decision. *Combs,* 106 F.3d at 1543; *Bradford v. Rent-A-Center East, Inc.* 346 F.Supp 2d 1203, 1211( M.D. Ala. 2004). Nor can pretext be established by showing that a supervisor was mistaken in his belief that an employee violated a work rule. *Hendricks v. Baptist Health Services*, 278 F.Supp. 1276 (M.D. Ala. 2003). Pretext is not proven by a showing of error, instead the evidence must show that the decision maker was motivated by discriminatory animus. *Lee v. GTE Florida, Inc.,* 226 F.3d 1249 (11th Cir. 2000).

      C.      <u>Defendant's Non-Discriminatory Reasons and Plaintiff's Rebuttal (Or Lack Thereof)</u>

           1.      *"Plaintiff had to perform acts of manual labor and Karen Stacey did not."*

The Defendants would first note a lack of proof as to one element of Butler's claim of disparate treatment. One common element of all disparate treatment claims is the allegedly different treatment of similarly situated employees (comparitors). This claim suffers from a lack of proof as to the treatment of similarly situated employees in that Karen Stacey is not a proper comparator. The plaintiff had the working title of "Inspector". Stacey and one other employee under Jackson's supervision were given the title of "Chief Inspector". These "Chief Inspector(s)" duties included, as admitted by Butler, the delegation of tasks and responsibilities. Stacey, as a "Chief Inspector", was not similarly situated to Butler.

Even though Butler's complete lack of proof as to a comparator prevented establishment of a *prima face case*, the Defendants still submitted evidence in response to this claim.

Defendants introduced Defendants' Exhibit KK, Karen Stacey's Employee Performance Appraisal, for the period of May 1, 2004 to May 1, 2005. The form reflected that Stacey performed field tests such as concrete slump tests, concrete air tests, temperature tests, density tests, and density tests for asphalt and soil compaction. Stacey also prepared concrete cylinders

for testing.  Also introduced was Defendants' Exhibit LL, a letter from Defendant Jackson to the Division Engineer.  The letter cites Stacey's exceptional performance of her duties, her willingness to do whatever was asked of her, and her willingness to work whatever hours were required of her.

Jackson went on to testify that he had witnessed Stacey performing acts of "manual labor."  He also noted that the work habits set forth in Defendant's Exhibit LL resulted in Stacey being given the working title of "Chief Inspector".

Butler's attempt at proving pretext with regard to this claim was her contention that, at some point in time, Stacey told her that she didn't do manual labor. Such an anemic showing does not permit, much less compel, a trier of fact to conclude that the treatment was motivated by illegal discrimination.  See *Lathem v. Dept. of Children and Youth Services*, supra..

2.       *"Plaintiff was required to arrive at work at 7:00 and Stacey did not have to report until 7:30."*

In response to this assertion, Jackson testified that Butler and Stacey were, for a period of time, allowed to report to work at 7:30 due to having to drop their children off at school.  They would then either only take a 30 minute lunch hour or work 30 minutes late in the afternoon. Jackson testified that this allowance was made while both employees worked together in the project office.  This practice ended when they were assigned to the field and had to be at project sites at 7:00 a.m.  As noted above, Defendants' Exhibit LL noted Stacey's willingness to work whatever hours were necessary.  Jackson also identified Defendants' Exhibit OO which consisted of two memoranda signed by Stacey and Butler.

These memoranda, dated January 29, 2004, contained acknowledgements by both employees that their normal work hours were 7:00 a.m. to 4:00 p.m.  Also introduced was Exhibit JJ which consisted of leave slips signed by both Butler and Stacey that reflected their

12

work days began at 7:00 a.m.  Jackson also identified Defendant's Exhibit PP which consisted of Karen Stacey's leave records from August 22, 2005, through January 25, 2006.  These leave records, like those in Exhibit JJ, all reflect that Stacey's work day began at 7:00 a.m.

Butler's attempt to show pretext, in this instance, consisted of producing two witnesses that testified that, although they were supposed to be at the job site at 7:00 a.m., they would sometimes return to the project office for supplies, between 7:00 a.m. and 7:30 a.m., and see Stacey drive up.  They both acknowledged that this only happened occasionally and that they did not know what Stacey's assignment was on that particular date or whether she had received permission to arrive late that day for some reason.  One of these witnesses, Kelvin Johnson, freely admitted that he had changed his factual testimony on another matter related to this case once he had gotten to know Ms. Butler. One of the two witnesses also admitted that, during the time frame of his testimony, that Karen had the title of "Chief Inspector" and had different duties.

Jackson also noted that during the time period subsequent to the January 31, 2005, traffic accident Stacey was a "Chief Inspector" and had a state vehicle assigned to her. She would sometimes have duties at more than one job site and often worked at a different site than the one to which Butler and her witnesses were assigned.

3.     *"Plaintiff was disciplined for violating the 'Call-In' Rule and Karen Stacey was not disciplined."*

This particular episode of purportedly disparate treatment is problematic for Butler for two reasons.  First, with regard to this event, Butler cannot even show a *prima facie* case[8].  To make a *prima facie* case of disparate treatment for violation of an employer's work rules, the plaintiff must show: 1) that the employee belongs to a protected class under Title VII;

---

[8] Or, in accordance with the ruling in *Collado v. United Parcel Service*, *supra*, Butler cannot produce evidence that each and every "element" of her claim is met.

2) that she was qualified for the job; and 3) that a similarly situated employee outside the class engaged in the same or similar misconduct but did not receive similar discipline. *Alexander v. Fulton County, Georgia*, 207 F.3d 1303,1336 (11th Cir. 2000).

Examination of the testimony and evidence described *infra* reveals that, with regard to the call-in policy, Butler cannot even prove the third element, i.e. that Karen Stacey even "engaged in the same or similar misconduct," much less "did not receive similar discipline".

Secondly, rather than rebut the evidence, she simply tries to argue that it is inaccurate.

Butler's purported rebuttal of this testimony was limited to her claim that Stacey's granddaughter had once gotten sick and had to go to the hospital in Birmingham and that Stacey had taken off to be with her granddaughter. She offered no proof that this happened during the effective time of the memo other than her uncorroborated recollection. Additionally, she offered no testimony that the sickness of Stacey's granddaughter resulted in Stacey "calling in" as defined by Jackson. As noted above, properly approved absence from work was not analogous to the "call-in" as contemplated by the policy.

Arguing with the evidence does not amount to a rebuttal. Rather than show pretext, Butler simply attempts to recast the evidence until it arranges itself in such a way that it is unbelievable on its face. By such manipulation, Butler attempts to escape the specter of having to produce a witness or other competent evidence to prove pretext. See *Bogle*, 162 F.3d at 658.

In responding to Butler's disparate treatment claim involving the "Call-In Rule", Jackson first identified Defendants' Exhibit U, a memorandum dated August 29, 2005, and entitled, "New Project Leave Procedures." The document provided that the new policy would allow the employees one unscheduled call-in per month and 2 unscheduled leave requests. Jackson defined an "unscheduled call-in" as a situation where an employee did not notify Jackson that the

employee would be out until the employee called Jackson on the morning of the absence. Jackson explained the reason for the policy.  He noted that the employees had started calling in at the last minute to notify him that they were going to be out.  As an example, he described situations where employees would know in advance that they had a doctor's appointment but would not let him know until the day of the appointment when they would call in and tell him that they would not be in.  Other employees would know that they needed to be off for various personal reasons and would give him no advance notice but would simply call in on the day in question and tell him they weren't coming in.  Jackson testified that such lack of notice made it difficult for him to plan the day's activities and workload.

Jackson then identified Defendants' Exhibit PP as being Karen Stacey's leave records dating from August 29, 2005, the date of Jackson's "New Project Leave Procedures" memo, to January 27, 2006, the month that Butler retired.  After reviewing each page of the exhibit, Jackson testified that Stacey had never violated the "one call in a month" policy.  He noted that when Stacey was going to be off, she turned in her leave slips weeks in advance, and on one occasion, months ahead of time.  Jackson also noted that being absent, after giving advance notice, was not violative of the policy.

 As noted above, this claim must fail due to the total lack of evidence with regard to elements of Butler's claim. Additionally, Butler has failed dismally in her attempt to prove pretext.

4.    *"Had Previously Approved Leave Taken Away"*

Examination of the testimony and evidence discussed below reveals that this claim fails 1) for lack of a proper comparator, 2) for the absence of any proof as to "an adverse employment action", and 3) Butler's failure to offer any evidence of pretext whatsoever.

Mark Waits testified at trial regarding the purported taking of leave.  Waits identified Defendants' Exhibit "T", a memorandum, with attachments, dated August 29, 2005, entitled "Leave Approval/Disapproval Procedures."  Waits testified that the memo was distributed to all of the Project Engineers under his supervision.

Waits testified that the memo addressed a situation that had been the subject of some controversy within the department.  A situation would sometimes occur in which an employee would submit a request for leave to their supervisor.  For whatever reason, the leave would be disapproved but the employee would take the time off anyway.  The department would allow leave to be used to pay the employee for his time off and would address the taking of the unauthorized time off through disciplinary and evaluation procedures.

The department clarified the procedure for handling such unapproved taking of leave. The department determined that all employees would submit a "Request for Leave" to their supervisors.  If the slip was disapproved, and the employee took the leave anyway, the time would be coded as "Leave Without Pay" and the employee would not be paid for his unauthorized time off.  He would not be allowed to use accrued leave to cover the absence.

Waits testified that an audit was done of Sixth Division payroll records to determine if any Sixth Division employees had improperly been allowed to use leave to cover incidents of unapproved leave rather than be placed on Leave Without Pay for the unapproved time off.

Waits then identified Defendants" Exhibit "V," a leave accrual correction form.  This particular leave accrual correction form bore the notation, "Leave was disapproved by supervisors on above listed employees.  They should have been charged LWOP (Leave Without Pay).  Requests have been made to accounting to reduce their pay by number of hours shown; thus, their leave should be adjusted" (parenthetical added).  Accordingly, the listed employees

had their pay reduced by the number of hours of unauthorized leave, but their leave total increased by the same number of hours. The increase in total hours was a result of the leave time that they had improperly used being restored to their leave balances for future, properly authorized, use.  Butler's name appeared on the list of the employees who took off even after their leave was disapproved[9].

Rather than rebut the proffered reasons for the taking of her leave, Butler simply argued as to the timing and the motive of the action.

As noted above, in addition to a failure to rebut the proffered non-discriminatory reasons, this purported incident of disparate treatment suffers a total lack of proof as to certain elements of the claim.

The elements of a claim of disparate treatment are:  1) that the employee belongs to a racial minority; 2) that the employee was subjected to an adverse employment action; 3) that the employer treated similarly situated employees outside her classification differently; and 4) that she was qualified to do her job.  *Knight v. Baptist Hospital*, *supra*.

With regard to this particular claim, Butler cannot show that she was subject to an adverse employment action.  While Exhibit "V" reflects that Butler was "docked" four hours pay, it also reflects that her leave balance was increased by four hours.  Her pay was reduced on the one hand, but she was given four hours of leave that she could use at a future day.  Such accounting manipulation does not amount to an "adverse employment action".

---

[9] By a strange coincidence, one of the other individuals listed on Exhibit "V" (Kelvin Johnson) shown as having taken off after leave was disapproved, was also one of the individuals produced by Butler to testify as to;  1) Stacey coming in late, 2) to Jackson's purportedly unfairly reprimanding Butler, and 3) to Waits' inaccurate recording of their interviews regarding Butler's grievances.  Johnson was also the witness noted previously for freely admitting that he changed his testimony as to the facts of certain events once he got to know Butler. He further offered his opinion that defendant Jackson was not a racist.

In addition to a total lack of proof as to the adverse employment action element, Butler's claim also suffers from a lack of a comparator as required by element number "3" above. Butler has failed to produce any evidence that Karen Stacey, or any other similarly situated employee either took unapproved leave or was treated differently after having done so.

There is a complete lack of proof as to two of the elements of this particular claim of discrimination as well as a total failure, on Butler's part, to show that the legitimate non-discriminatory reason for the employer's actions was pretextual.

> 5.   *"Butler was denied promotion to "Civil Engineer."*

In order to establish the elements of a claim of discrimination with regard to failure to promote, a plaintiff must show: 1) that she belongs to a protected class; 2) that she was qualified for a job for which the employer was seeking applicants; 3) that despite her qualifications, she was rejected; and 4) that after her rejection, the employer continued to seek applicants or filled the position with a person outside of plaintiff's protected class. *Phillips*, 329 F.Supp.2d 1289; *Walker v. Mortham,* 158 F.3d 1177, 1186 (11th Cir. 1998).

At trial Butler contended that she was denied promotion to the position of "Civil Engineer" and that Karen Stacey was offered the promotion.

Defendants offered Exhibits "CC" and "DD", the job announcements for the position of "Civil Engineer". Both announcements indicate that a written test would be given as part of the application and evaluation process.

Defendants introduced Exhibit "BB," the "Certificate of Eligibles" for the CE position. Waits testified that Butler's name did not appear on the Certificate and that it was impossible for the department to fill the position with someone whose name did not appear on the list.

Defendant's legitimate non-discriminatory reasons for failure to promote Butler was that her name simply did not appear on the "Certificate of Eligibles". Rather than attempt to rebut the reason, Butler argued as to whose fault it was that her name was not on the list. Evidence revealed, without dispute, that Butler was responsible for the absence of her name from the register.

Butler also fails to prove certain elements of her claim of disparate treatment in failing to promote her to Civil Engineer.

Plaintiff has failed to make a sufficient showing on the "qualified for and applied for the promotion" element of her "failure to promote" claim.

It is without dispute, that employment decisions in this case are governed by Ala. Code, §36-26-1, *et seq.*, (1975), otherwise known as the "Merit System Act". As noted by this Court in *Smith v. Alabama,* 252 F.Supp.2d 1317, 1329, n. 25 (M.D. Ala. 2003):

> "Under the State Merit System Act, an examination is administered and graded, and the applicants names are placed on the register in order of their grades, with the highest grade number listed at the top of list.. . .Only the top ten scoring applicants are eligible for appointment or are 'reachable' on the register." (Citations omitted)

At trial, Steve Dukes, a State Personnel Analyst III with the State Personnel Department, testified that Butler had submitted three applications for different classifications, or options, of the "CE" position. One of the applications was rejected due to Butler's lack of qualifications. Of the remaining two applications, Butler was deemed to have met the minimum qualifications and sent a notice to schedule a date to take the written test for the position. According to Dukes' testimony, Butler failed to appear for the examination for either position[10]. Duke testified that Butler, according to SPD records, called and scheduled the test and failed to appear. Since

---

[10] See Exhibits FF and GG, Planning Option Applicant Data Base reflecting Butler met MQs but failed to schedule test and Data Base of Construction Applicants Who Called and Scheduled Exam but failed to appear.

Butler never took the examination, she could not be placed on the register as described by this Court in *Smith*, *supra*. She failed to complete the application process.

Butler produced no evidence to dispute Dukes' testimony. Instead, she re-took the stand and denied that she had ever received the notice to call and schedule a test. She had no explanation as to why SPD records were to the contrary[11].

It is without dispute Butler obviously failed to show that she met the "qualified for and applied for promotion" element of her claim.

In light of the facts presented, it is equally obvious that Butler has produced no proof as to the element of her claim "that despite her qualifications, she was rejected."

Butler also failed to offer any proof that, "after her rejection, the employer continued to seek applicants or filled the position with a person outside of Plaintiff's protected class."

First, the assertion that Karen Stacey was "offered" the CE position certainly does not establish that Defendants "filled the position with a person outside of Plaintiff's protected class."

Secondly, Defendants point out that during the presentation of Butler's case she called Jeffery C. Hollingsworth, a black male, as a witness. Hollingsworth acknowledged that he was hired to fill the position about which Butler complained.[12]

In summary, Butler failed to show pretext with regard to the Defendants' legitimate non-discriminatory reason for not promoting Butler. Additionally, there has been a complete lack of proof with regard to three out of the four elements of Butler's claim of disparate treatment in promotions.

### IV. Plaintiff's Assertions That Stacey Was Accorded Favorable Treatment Due To Her Friendship With Defendants Is Insufficient To Prove Discrimination

---

[11] Butler also failed to offer any testimony or evidence that ALDOT, Waits or Jackson were responsible for any failure to place Butler's name on a register.

[12] Mark Waits reviewed the Certificate of Eligibles, Exhibit BB, and acknowledged that Hollingsworth was hired to fill the "CE" position.

In the initial moments of her cross-examination, Butler, once again, opined that Karen Stacey received favorable treatment due to her friendship with Defendants Waits and Jackson. Her attorney advanced that theory with Waits and even read from Stacey's deposition in support of the allegation.

Rather than rebut Defendants' non-discriminatory reasons, Plaintiff attempts to buttress her allegations by showing favoritism on the part of Waits and Jackson.

It is well settled that favoritism is not violative of Title VII. *Howard v. BP Oil Co*., 32 F.3d 520, 527 (11th Cir 1994).

This point can best be addressed by quoting from this Court's opinion in *Phillips v. Hibbett Sporting Goods, Inc.,* 329 F.Supp.2d 1280 (M.D.Ala. 2004). After noting that, "…the sole concern is whether unlawful discriminatory animus motivated a challenged employment decision...," the Court went on to opine at page 1291, footnote 8 that,

> "Phillips does her own case damage when she speculates that Griffin and Curry were selected for promotion because they were Bundirck's 'buddies'. If Phillips' speculation is correct, then her case challenges the 'fairness' of employment decisions based on friendship rather than the legality of employment decisions motivated by racial preference or sex discrimination. Put another way, even if a jury believed Phillips' speculation, Bundrick's decision to promote his friends would not support a claim of race or sex discrimination…"

The Court went on to cite cases holding that preferential treatment accorded long term business associates, relatives, or acquaintances was not only not discriminatory but could serve as a legitimate non-discriminatory reason for certain employment actions.

Defendants are entitled to a favorable ruling on their Rule 50(b) motion as to the evidence of Stacey's favorable treatment. As noted by this Court in *Phillips*, *supra*, if Butler's speculation is correct, then her case challenges the "fairness" of employment decisions based on

friendship rather than the legality of employment decisions motivated by racial preference or sex discrimination. Even if a jury believes Butler's speculation, Waits' or Jackson's favorable treatment of Stacey would not support a claim of race or sex discrimination.

V. Defendants Are Entitled To Judgment As A Matter Of Law With Regard To Plaintiff's Claim Of Retaliation

The sole retaliation claim presented to the jury was that ALDOT retaliated against Plaintiff for reporting a racial slur allegedly made by Karen Stacey at the time of an automobile accident on January 31, 2005.[13] In order to prevail on her retaliation claim, Plaintiff must have presented evidence to the jury that: 1) she engaged in statutorily protected activity; 2) an adverse employment action occurred; and 3) the adverse action was causally related to her protected activity. *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997).

ALDOT asserted, in its Motion for Summary Judgment and at trial, that Plaintiff's report of the allege slur was not a "statutorily protected activity" proscribed by Title VII. ALDOT noted that Plaintiff must demonstrate a good faith, reasonable belief that her employer was engaged in an unlawful employment practice about which she complained. In other words, Plaintiff must prove both: 1) a subjective, good-faith belief that ALDOT engaged in an unlawful employment practice and 2) that her belief was objectively reasonable. *Clover v. Total System Services, Inc.*, 176 F. 3d 1346, 1351 (11th Cir. 1999). See also, *Little*, *supra*, at 960.

The Court, in its *Memorandum Opinion and Order,* (Doc. No. 53), held that Plaintiff had a "good faith, reasonable belief that ALDOT was engaged in an unlawful employment practice".[14] Accordingly, the Court ruled Plaintiff was engaged in statutorily protected activity when she complained about Stacey's purported slur. The Court found Plaintiff's good faith

---

[13] Plaintiff "reported" Stacey's slur to her supervisors on or about April 15, 2005 in a department grievance. (Doc No. 47, at 15, ¶23).
[14] Doc. 53 at 28.

belief was established by her attempt to complain to Jackson about the racial slur "a few hours after Stacey allegedly made the slur."[15]   Stated another way, the Court found ALDOT had committed an unlawful employment practice by virtue of Plaintiff's attempt to report an alleged racial slur of a co-worker directed not to Plaintiff but to a third party.   The Court imputes retaliatory animus to ALDOT from this singular comment.   Defendants submit that Plaintiff's alleged attempt to report Stacey's slur did not establish her good faith belief that ALDOT was engaged in an unlawful employment practice.   At best, Plaintiff had a subjective, good faith belief that Stacey had uttered an alleged racial slur.   This does not arise to the level of a good faith belief of an unlawful employment practice by ALDOT.

Furthermore, Plaintiff did not present any evidence that she believed that this purported racial slur constituted an unlawful employment practice by her employer.   Plaintiff did not contend that Defendant ALDOT encouraged Stacey to utter the slur or that ALDOT condoned the slur.   Thus, Plaintiff failed to demonstrate that she subjectively (that is, in good faith) believed that her employer was engaged in an unlawful employment practice.   Thus, her retaliation claim, based solely on her complaint about Stacey's racial slur, should not have been permitted to go to the jury.

Assuming Plaintiff did, in fact, present evidence that she subjectively believed that Stacey's racial slur constituted an unlawful employment practice by ALDOT, she must also show that her belief was objectively reasonable in light of the facts and record presented.   *Stough v. Jameson Inns*, 2006 WL 2009087 (M.D. Ala. 2006).   The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law.   *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1388 (11th Cir. 1998).   Failure to charge the employee who opposes an employment

---

[15] Doc. 53 at 28.

practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry". *Harper* at 1388, n. 2. *See also Clover v. Total System Services, Inc*., *supra* at 1351 (11th Cir. 1999).

In evaluating the objective reasonableness of Plaintiff' belief, the Court should look only to the conduct which she opposed. *Dixon v. Rave Motion Pictures, Inc.,* 2006 WL 4483152 (M.D. Ala. 2007). That is, the Court should look at Stacey's alleged racial slur and determine whether this slur constituted actionable racial discrimination. *Id***.** The alleged conduct of Stacey falls within the framework for analyzing a racially hostile work environment.

In order to constitute an actionable racial discrimination claim or racially hostile work environment, racial slurs must be "so commonplace, overt and denigrating that they create an atmosphere charged with racial hostility." *Edwards v. Wallace Community College*, 49 F.3d 1517 (11th Cir. 1995); *EEOC v. Beverage Canners, Inc*., 897 F.2d 1067, 1068(11th Cir. 1990). It is not sufficient that Plaintiff merely highlight a couple of utterances of racial epithets as evidence of a hostile work environment. *Smith v. Beverly Health and Rehab Servs.,* 978 F.Supp. 1116 (N.D. Ga. 1997); *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)("As we pointed out in *Meritor,* mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.")

The Eleventh Circuit has made it abundantly clear that isolated incidents of racial slurs are insufficient to establish a racially hostile environment or to affect the conditions of one's employment. *Godoy v. Habersham*, 211 Fed.Appx. 850 (11th Cir. 2006); *Abbes v. Embraer Service, Inc*., 195 Fed.Appx.. 898(11th Cir. 2006); *Howard v. United Pruitt Corp*., 196 Fed Appx. 780 (11th Cir. 2006); *Austin v. City of Montgomery,* 196 Fed.Appx. 747 (11th Cir. 2006), *Hooks v. Bank of America*, 183 Fed.Appx. 833 (11th Cir. 2006); *Shepherd v. Summit Mgt. Co.,*

*Inc.*, 726 So.2d 686 (Ala.Civ.App. 1998); *Laosebikan v. Coca-Cola Co.,* 167 Fed.Appx. 758

(11th Cir. 2006); *Barrow v. Georgia Pacific Corp.*, 144 Fed Appx 54 (11th Cir. 2005), *Mosley v.*

*Meristar Mgt. Co., LLC.,* 137 Fed Appx 248 (11th Cir. 2005). The Supreme Court has declared

that a hostile work environment generally does not arise from the "mere utterance of an epithet

which engenders offensive feelings in an employee". *Harris*, 510 U.S. at 21.

In this context, Stacey's alleged single racial slur, directed toward someone other than

Plaintiff, fails to meet the threshold of being "so commonplace, overt and denigrating that they

create an atmosphere charged with racial hostility." The only conclusion that can be reached

regarding Plaintiff's objective belief that Stacey's alleged slur constituted an illegal employment

practice attributable to her employer is as stated in *Clark County School District v. Breeden*, 532

U.S. 268, 271 (2001), -*"No reasonable person could have believed that the single incident*

*recounted above violated Title VII's standard."* (Emphasis added).

Plaintiff failed to establish that the alleged singular racial epithet constituted an unlawful

employment practice, and perforce, a statutorily protected activity. Accordingly, Defendant is

entitled to a favorable ruling on their Rule 50(b) motion as to Plaintiff's retaliation claim, and is

due to have judgment granted on this claim as a matter of law.

<u>VI. Plaintiff Has Failed To Rebut Defendant's Legitimate Non-Discriminatory Reasons For All
Of The Employment Actions Allegedly Taken Against Plaintiff In Retaliation For Her
Participation In A "Protected Activity"</u>

In a previous portion of this memorandum, Defendants cited case law pertinent to the

defendant's responsibility to proffer legitimate non-discriminatory reasons for actions that the

plaintiff contends were taken in violation of Title VII. As previously noted, once the defendants

proffer these legitimate non-discriminatory reasons, the plaintiff show that the "legitimate,

nondiscriminatory reason" proffered by the defendant is pretextual. As previously noted, a

"reason" is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.

Like the requirements of a disparate treatment case, a plaintiff alleging retaliation must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of his claim.

At trial, Defendants proffered a legitimate, non-retaliatory reason for each and every employment action of which Plaintiff complained. Plaintiff failed to show that any of thVe reasons proffered were false or that retaliation was the real reason for Defendants' actions.

Defendants are entitled to judgment as a matter of law with regard to Plaintiff's utter failure to show pretext with regard to the proffered legitimate, non-retaliatory reasons for each and every employment action which Plaintiff contended were retaliatory.

### VII. Defendants Are Entitled To A New Trial Due To The Erroneous Admission Of The James Horace Matter As "Background"

The Court allowed extensive testimony and evidence regarding the sexual harassment of Plaintiff by a supervisor, James Horace. Additionally, the Court allowed EEOC charges regarding the harassment to be introduced into evidence despite their being time-barred. These matters were allowed pursuant to the Court's interpretation of *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed. 2d 106 (2002).

The primary focus of the *Morgan* case is how the "continuing violation" theory applies to the timely filing of charges under Title VII. 2 Emp. Discrimination Coordinator §73.15, *Analysis of Federal Law*; Benjamin Morris, *A Door Left Open? Natl Passenger Corp v. Morgan and Its Effect on Post Filing Discrete Acts in Employment Discrimination Suits*, 43 Cal.W.L. Rev 497 (Spring 2007); Vincent Cheng, *Natl Railroad Passenger Corp v Morgan: A Problematic Formulation of the Continuing Violation Theory*, 91 Cal L. Rev. 1417 (Oct. 2003).

The key issue decided by the *Morgan* court was the application of the "continuing violation" doctrine to discrimination claims. The majority decided to terminate the use of the continuing violation doctrine as applied to Title VII claims involving discrete acts of discrimination and retaliation, while allowing the doctrine's continued use in conjunction with hostile work environment claims. *Morgan* at 122. The Court defined the term "unlawful employment practice" and made a sharp distinction between discrete discriminatory acts and hostile work environment claims. *Morgan* at 110.

The court reasoned that, "a discrete retaliatory or discriminatory act occurred on the day that it happened." A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it. The Court went on to define the term "discrete acts" at page 114, as follows:

> "Discrete acts such as termination, failure to promote, denial of transfer or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'. [Therefore] Morgan can only file a charge to cover discrete acts that occurred within the appropriate time period."

The Court then noted that discrete acts of discrimination and retaliation are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. *Morgan* at 113. Instead, the Court reasoned, "each discrete discriminatory act starts a new clock for filing charges alleging that act." The Court then noted, at page 113, that Title VII does not bar an employee from using the prior discrete acts as background evidence in support of a timely claim.

The Court then contrasted claims based on a discrete act with a hostile work environment claim. The Court described the hostile environment claim as one comprised of "a series of separate acts that collectively constitute one unlawful employment practice." The Court explained that the very nature of a hostile work environment claim involves repeated conduct,

noting that the unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *Morgan* at 115. Unlike discrete acts, events occurring outside the filing period may still be part of a single hostile work environment claim, as long as an act contributing to the claim occurs within the filing period.

The "background evidence" contemplated by *Morgan* consists of prior discrete acts of discrimination *that are related to acts* alleged in timely filed charges of discrimination. *Morgan* at 113.

An examination of the term 'background evidence" in the context of the *Morgan* opinion reveals that only prior discrete acts of discrimination, related to acts alleged in timely filed charges can be used as background. Use of prior hostile environment claims, concerning entirely different types of discrimination, as background evidence is simply not contemplated by *Morgan*. The Eleventh Circuit noted the two separate and distinct types of claims addressed in *Morgan*, acknowledging the contrast between "discrete discriminatory or retaliatory acts" and "a claim alleging a hostile work environment." *Ledbetter v. Goodyear Tire and Rubber Co*., 421 F.3d 1169 (11th Cir. 2005).

Additionally, allowing testimony as to the Horace matter was improper in that it allowed Plaintiff, who is asserting one type of discrimination (racial) to use evidence of another type of discrimination (sexual harassment) to bolster her claim.

A number of courts have ruled that bolstering a plaintiff's claim in such a manner is improper. *Sidari v. Orleans County*, 2000 WL 33407343 (W.D. N.Y. 2000); *Kun v. Finnegan, Henderson, et al*., 949 F.Supp. 13 (DDC 1996); *Rivera v. Baccarat* 1997 WL 777887(S.D.N.Y. 1997); *Simonetti v. Runyon*, 2000 WL 1133066 (DNJ 2000); *EEOC v. Farmer Bros Co*. 31 F.3d

891,898 (9th Cir. 1994); *Kelly v. Boeing Petroleum Services, Inc.,* 61 F.3d 350, 358(5th Cir. 1995); *Ollie v. Columbia University*, 332 F.Supp.2d 599 (S.D.NY. 2004).

The improper allowance of testimony and evidence regarding the James Horace matter entitles Defendants to a new trial in accordance with Rule 59.

### VIII. Defendants Are Entitled To A New Trial Due To The Excessive Award of Compensatory Damages To Plaintiff

In the damages portion of the jury verdict form, the jury awarded Plaintiff $25,000 as lost earnings and benefits. It is unclear whether the jury awarded this amount to compensate her for an unspecified salary reduction she suffered during her employment with ALDOT or whether the award was based on Plaintiff's "denial of promotion" claim. In either event, Plaintiff has the burden of proof regarding the actual damages she sustained due to any adverse employment action taken by Defendants. *See Holley v. Northrop Worldwide Aircraft Services, Inc.*, 835 F. 2d 1375 (11th Cir. 1988); *Walker v. Ford Motor Co*., 684 F. 2d 1355 (11th Cir. 1982); *see also Horne v. Duke Homes, Div. of Windsor Mobile Homes, Inc*., 755 F. 2d 599 (7th Cir. 1985).

The record is devoid of any evidence of actual damages or lost wages or earnings sustained by Plaintiff as a result of Defendants' alleged discrimination or retaliation. Plaintiff presented no evidence of her earnings while employed at ALDOT and did not present any evidence of any earnings reduction she sustained as a result of ALDOT's actions.[16] Furthermore, Plaintiff presented no evidence of lost wages or earnings that she may have suffered as result of Defendant's failure to promote her to a Civil Engineer position. The jury award is not supported by any evidence, and, thus, is purely speculative. *See Akouri v. Florida Department of Transportation*, 408 F. 3d 1338, 1344 (11th Cir. 2005) ("[W]e affirm the district court's order setting aside the backpay award based on the fact that Akouri presented no

---

[16] It is undisputed that Plaintiff resigned her employment with ALDOT January 1, 2006. (Doc. No. 47 at 18). Thus, Plaintiff was not entitled to a damages award for any losses she suffered after this date.

evidence, as to his salary while employed by the DOT, from which the jury could make a reasonable net lost wages calculation."). Accordingly, Defendants request a new trial on the issue of damages, or, in the alternative, a remitter of this amount as excessive compensatory damages.

With respect to the jury's award of $25,000 for compensatory damages for Plaintiff's emotional distress, this court should be guided by the principle that "compensatory damages for emotional distress may not be presumed from every constitutional violation, but must be proven by competent, sufficient evidence." *Akouri*, 408 F. 3d at 1345. Such damages are "customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff." *Carey v. Piphus*, 435 U.S. 247, 263-64 (1978). The testimony presented must consist of more than mere conclusory statements that the plaintiff suffered emotional distress and evidence of a "genuine injury" is necessary. *Id*. at 264.

In the instant case, Plaintiff did not present any evidence of any genuine injury that she suffered as a result of Defendants' alleged constitutional violations. At best, Plaintiff and her father testified that she was in "bad shape" before any adverse employment action occurred and became worse afterwards. These conclusory statements do not support an award of compensatory damages based on emotional anguish.

In *Johnson v. Stone Container,* 88 F. Supp. 2d 1295 (N.D. Ala. 2000), Judge Hancock considered a case wherein the plaintiff was awarded compensatory damages in the amount of $50,000.00 for mental anguish associated with the defendant's improperly considering the filing of a charge with EEOC when 1) it entered in plaintiff's employment file a reprimand, 2) gave the plaintiff an unfavorable performance review, and 3) suspended the plaintiff with pay for one day.

The Court reduced the award from $50,000.00 to $7,500.00 based upon its conclusion that the jury's award for mental anguish was excessive given the bare minimum of evidence presented.

Based upon the bare minimum of evidence presented by Plaintiff as to mental anguish, Defendants are entitled to a new trial on the issue of compensatory damages, or in the alternative, a remittitur of the damages awarded.

## IX. Defendants Are Entitled To A New Trial Due To The Erroneous Award of Punitive Damages to Plaintiff

The jury awarded Plaintiff $150,000 in punitive damages.  The verdict fails to specify to which of the Defendants, (ALDOT, Waits or Jackson), the award is assessed.  To the extent that the punitive damages may have been assessed against ALDOT, the verdict is in error, as ALDOT cannot be liable for punitive damages under Title VII.  See 42 U.S.C. §1981a (b)(1)("[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision").[17]  In addition, the Court indicated to the parties that it would change the Verdict Form to reflect that punitive damages could not be assessed against ALDOT.  The Verdict Form, as revised by the Court, was not given to the parties for review and is ambiguous at best with respect to the punitive damage portion.  Thus, ALDOT is entitled to a new trial or a complete remittitur of punitive damages.

Assuming that the punitive damage award can be construed as having been awarded solely against Defendants Waits and Jackson in their individual capacities, it is not supported by the evidence.  Under §1981, punitive damages may be awarded "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

---

[17] Furthermore, the jury instructions appear to place the responsibility for punitive damages on ALDOT, which may well have contributed to juror error in assessing punitive damages

indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

"Punitive damages are disfavored by the law and are awarded solely to punish defendants and

deter future wrongdoing." *See Walters v. City of Atlanta,* 803 F. 2d 1135, 1147 (11th Cir. 1986).

In order to support a punitive damages award, a plaintiff must come forward with substantial

evidence that the defendant acted with actual malice or reckless indifference to his federally

protected rights. *Kolstad v. Am. Dental Ass'n.,* 527 U.S. 526 (1999). Malice means "an intent to

harm" and recklessness means "serious disregard for the consequences of [one's] actions."

*Splunge v. Shoney's Inc*., 97 F. 3d 488, 491 (11th Cir. 1996). Although "[a] jury may find

reckless indifference where the employer does not admit that its actions were wrong,…mere

negligence as to the civil rights of employees is not enough to justify punitive damages."

*U.S.E.E.O.C. v. W & O, Inc*., 213 F. 3d 600, 611 (11th Cir. 2000)(citation omitted).

Plaintiff failed to show malice or reckless indifference on the part of either Waits or

Jackson. No evidence was presented that Defendants Waits and Jackson discriminated against

Plaintiff in the face of the knowledge that their actions would violate federal law. Accordingly,

if the award of punitive damages was assessed against Waits and Jackson, then it was improper

and Defendants are entitled to a new trial on the issue of damages.

Furthermore, even if punitive damages in some amount could be justified against

Defendants Waits and/or Jackson, the award was excessive. The Supreme Court has recognized

constitutional principles of due process prohibit the imposition of grossly excessive or arbitrary

punishments on a tortfeasor. *BMW of N.AM., Inc. v. Gore*, 517 U.S. 559, 562 (1996). In *Gore*,

three guideposts were articulated in determining whether a punitive damage award was

excessive: 1) the degree of reprehensibility of the defendant's misconduct; 2) the disparity

between the actual or potential harm suffered by the plaintiff and the punitive damages award;

and 3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

As noted above, Plaintiff failed to present any evidence of malice or reckless indifference by Defendants Waits or Jackson. With respect to the proportionality of the actual harm to Plaintiff and the punitive damages, Plaintiff failed to prove that she was entitled to any compensatory damages, so an award of punitive damages would be disproportionate. Although the total jury award does not exceed the statutory cap that could have been awarded Plaintiff for compensatory damages under Title VII, Defendants submit that the punitive damage award is both unreasonable and disproportionate to the amount of harm sustained by Plaintiff and the general damages recovered. Further, given the lack of evidence of reprehensible conduct, this Court must find that the punitive damage award against Defendants Waits and Jackson was so excessive as to violate due process.

Finally, assuming the court determines that an award of punitive damages against ALDOT was proper, (despite the statutory prohibition), the award is unsupported by the evidence. Punitive damages will ordinarily not be assessed against employers with only constructive knowledge of harassment; rather, punitive damages may only be considered in cases where the discriminating employee was high up the corporate hierarchy or where higher management countenanced or approved his behavior. *Dudley v. Wal-Mart Stores, Inc*. 166 F.3d 1317 (11th Cir. 1999). Plaintiff's evidence is insufficient to impose punitive damages against ALDOT on this basis.

Accordingly, Defendants are entitled to have their Motion for a New Trial on the issue of damages granted, or in the alternative, a remittitur of the punitive damages awarded.

## X. Conclusion

For the reasons cited above, the Defendants Rule 50 and Rule 59 motions are due to be granted.

RESPECTFULLY SUBMITTED
TROY KING
ATTORNEY GENERAL

s/ Harry A. Lyles
Jim R. Ippolito, Jr. (IPP001)
Assistant Attorney General
Chief Counsel

Harry A. Lyles (LYL001)
Assistant Attorney General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone:  (334) 242-6350
Facsimile:  (334) 264-4359
lylesh@dot.state.al.us

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **ALVERENE BUTLER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) **CASE NO. 2:06-cv-00278-MEF-CSC** |
| **ALABAMA DEPARTMENT OF** | ) |
| **TRANSPORTATION, et al.,** | ) |
| | ) |
| **Defendant.** | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 29, 2007, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECT system, which will send notification to the following:

Mr. Jay Lewis, Esq.
Law Offices of Jay Lewis, L.L.C.
P.O. Box 5059
Montgomery, Alabama  36103-5059
ATTORNEY FOR PLAINTIFF


s/ Harry A. Lyles
Harry A. Lyles (LYL001)
Assistant Attorney General
Assistant Counsel

**ADDRESS OF COUNSEL:**
State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
(334) 242-6350 (office)
(334) 264-4359 (facsimile)
lylesh@dot.state.al.us